**COPELAND WELL SERVICE, INC., Appellant,**

v.

**SHELL OIL COMPANY, Appellee.**

**No. 849.**

Court of Civil Appeals of Texas, Tyler.

Sept. 25, 1975.

Rehearing Denied Oct. 23, 1975.

Forrest G. Braselton, Zeleskey, Cornelius, Rogers, Berry & Hallmark, Lufkin, for appellant.

Michael A. Hatchell, Ramey, Flock, Hutchins, Grainger & Jeffus, Tyler, for appellee.

MOORE, Justice.

Shell Oil Company, appellee, instituted suit against Copeland Well Service, Inc., appellant, seeking recoupment under the indemnity provisions of an oil well workover contract. Shell Oil Company employed Copeland Well Service, Inc., hereinafter called Copeland, to re-work a well known as the J. B. Parker Well No. 9R situated in Anderson County. While performing the work Homer Johnson, an employee of Copeland, was electrocuted. Thereafter his mother, Velma P. Hill, brought a wrongful death action against Shell Oil Company in the Third Judicial District Court of Anderson County, Texas, to recover damages for her son's death. Shell called on Copeland to defend the suit under the provisions of the indemnity agreement but Copeland refused to do so. Shell defended the suit at its own expense and finally settled the suit for the sum of $8,000.00. Shell brought the present suit seeking reimbursement of the $8,000.00 paid in settlement of the Hill suit plus attorney's fees in defending the suit and other expenses totaling the sum of $23,-575.88. Copeland answered with a general denial and specially denied liability on the indemnity agreement, alleging that Shell's negligence was the sole cause of Johnson's death. After a trial before the court, without the aid of a jury, judgment was rendered in favor of Shell for the sum of $23,575.88. From this judgment Copeland prosecuted this appeal.

We affirm.

At the request of Copeland, the trial court filed findings of fact and conclusions of law, finding, among other things, as follows: (1) the agreement of indemnity executed by Copeland in favor of Shell on February 24, 1964, provided: "* * *

Contractor shall indemnify Shell and hold it harmless from and against all claims of and liability to third parties (including, without limitation, all employees of Shell or contractor and all sub-contractors and their employees) for injury to or death of persons or loss of or damage to property arising out of or in connection with the performance of this contract, except where such injury, death, loss or damage has resulted from the negligence of Shell without negligence or fault on the part of contractor or any subcontractor. Contractor shall defend all suits brought upon such claims and pay all costs and expenses incidental thereto, but Shell shall have the right, at its option, to participate in the defense of any such suit, without relieving contractor of any obligation hereunder." (2) prior to April 16, 1965, and pursuant to the work-over contract, Shell requested Copeland to perform a work-over of the J. B. Parker Well No. 9R which work including pulling and replacing the pipe in the well, for which work Copeland was solely responsible, (3) on April 16, 1965, after Copeland's employees had pulled the pipe out of the well, Copeland dispatched three employees, including the deceased Homer Johnson, to replace the pipe in the well, (4) on said date Raymond Hogan, an employee of Copeland, while operating the controls of a rig and winch line which was used to lift the drill pipe so as to replace it in the well, brought a strand of the pipe into contact with, or in close proximity to, an electrical power line which passed over the area where the pipe was being lifted from the ground and being replaced in the well, (5) by reason of the contact of the piece of drill pipe with the electric line, Homer Johnson was electrocuted, (6) the electric power line was open and obvious and the supervisory personnel of Copeland knew and appreciated the danger posed by the line. On several prior occasions Shell's representatives had warned Copeland's supervisors of the danger of the line, who, in turn, advised Hogan of the danger. Hogan had been instructed to move the drill pipe under the line by hand so that it would not come in contact or close proximity to the power line. In raising the pipe with the rig and winch and bringing it into contact with the line, Raymond Hogan was negligent, and his negligence was the sole proximate cause of Johnson's death, (7) no agent, servant or employee of Shell committed any act of negligence which contributed to cause the death of Johnson, (8) thereafter a suit for damages was instituted against Shell and Copeland by Velma P. Hill, the mother of Johnson, (9) Shell tendered defense of the suit to Copeland under the provisions of the indemnity contract but Copeland refused to defend the suit, and (10) Shell defended the suit at its own expense and ultimately settled the suit for $8,000.00 and in so doing incurred attorney's fees in the sum of $10,085.27 and other expenses in the amount of $265.09 totaling the sum of $18,350.36. In the conclusions of law the trial court, among other things, concluded that the $18,350.36 in damages sought by Shell in the present suit were liquidated damages and that Shell was therefore entitled to interest at the rate of 6% per annum on said liquidated sum from the date of the settlement of the previous suit on March 16, 1970.

By the first and second points of error, Copeland contends that the trial court erred in permitting Shell to recover on the basis of the indemnity agreement. In this connection, Copeland takes the position that Johnson's death was brought about by the negligence of Shell. Based on this premise, Copeland relies on the well-settled legal principle set out in *Fireman's Fund Insurance Company v. Commercial Standard Insurance Company*, 490 S.W.2d 818 (Tex.1972), that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such obligation in clear and unequivocal terms. Copeland argues that the obligation assumed by it in the agreement is not clear and unequivocal; thus, the agreement is void for the reasons set forth in *Fireman's*

*Fund Insurance Company v. Commercial Standard Insurance Company,* supra.

Obviously, the foregoing principle of law constitutes a defense only in those situations where it has been established that the indemnitee's negligence caused the casualty made the basis of the indemnitee's suit on the contract. Thus, in order to determine whether Copeland may avail itself of the defense in the present suit, it becomes necessary to first determine whether Shell was guilty of any negligent act which was the sole or proximate cause of the death of Homer Johnson.

Contrary to the trial court's findings, Copeland contends by points four through six that the court erred in finding Shell breached no duty owed Johnson or Copeland and in further finding that Shell's employees were not guilty of any act of negligence solely or proximately causing Johnson's death. Since the defense relied upon by Copeland in its first two points depends on whether Shell was guilty of negligence, we will first direct our attention to points four through six and then return to points one and two.

■ The issue of negligence having been pleaded by Copeland as a defense to Shell's suit, such issue became a controverted issue of fact. Proof of negligence was therefore cast on Copeland who had the burden of securing a favorable finding upon such issue.

■ As stated, the trial court resolved the issue of negligence by a negative finding, thereby exonerating Shell of liability. The trial court's negative finding on the issue of negligence, when properly interpreted, amounts to nothing more than a finding that Copeland failed to discharge its burden of establishing negligence on the part of Shell by a preponderance of the evidence. It does not mean that Shell was not guilty of negligence, but only that the trial court was not persuaded that it was established by a preponderance of the evidence. Where the trier of the fact returns a negative finding to an issue upon which

the proponent has the burden of proof, the negative finding need not be supported by affirmative evidence. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191 (Tex.1966); *Smith v. Safeway Stores, Inc.,* 433 S.W.2d 217, 218 & 219 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). Under these circumstances, the party having the burden of proof is placed in the position of having to contend that the evidence establishes the issue as a matter of law. See Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361, 364 (1960).

■ Appellant has no point of error contending that Shell's negligence was established as a matter of law, nor does appellant argue that negligence on the part of Shell was conclusively established. As we construe appellant's points four through six, appellant contends that there is no evidence to support the trial court's negative finding on the issue of negligence. If this is appellant's contention, then such points contain no complaint subject to review. If, on the other hand such points could be construed as a contention that Shell's negligence was conclusively established, the points are not well taken because the evidence on the issue of Shell's negligence is conflicting. In this circumstance it cannot be said that negligence was established as a matter of law. Appellant's points four through six are overruled.

■ Having failed to obtain a finding or to conclusively establish that Shell was negligent, appellant is in no position to contend that the indemnity agreement is unenforceable on the grounds that the same did not unequivocally state that the indemnitee (Shell) was to be protected from its own negligence. In the absence of a finding of negligence on the part of Shell, the validity of the indemnity agreement never came into play. Consequently, we do not reach the question of whether the indemnity agreement was sufficient to protect Shell against its own negligence. Appellant's first and second points are overruled.

By its seventh point Copeland complains of the action of the trial court in awarding Shell interest on the *Hill v. Shell* judgment, together with interest on Shell's attorney's fees and other expenses incurred by Shell in settling the wrongful death action.

The *Hill v. Shell* judgment was rendered on March 16, 1970. In rendering judgment against Copeland in the present suit, the trial court concluded that the amount of Shell's damages was liquidated and definitely ascertainable as of March 16, 1970, the date of the Hill judgment and awarded Shell pre-judgment interest thereon.

 It is well settled that where, under the provisions of the indemnity contract, the indemnitee makes advances in reference to the matter indemnified, he is entitled to interest on such advances from the time they are made. *Parsons v. Parsons*, 284 S.W. 933, 935 (Tex.Comm'n App. 1926, jdgmt. adopted); 42 C.J.S. *Indemnity* § 13 at 585 (1944). This situation prevails here and, therefore, Shell was entitled to pre-judgment interest. Appellant's seventh point is overruled.

By the eighth and final point Copeland contends that the trial court erred in rendering judgment on the basis of the indemnity agreement. Copeland argues that the agreement was void for want of mutuality in that there was unequal bargaining power between Copeland and Shell. We overrule the contention.

 Lack of mutuality and duress are affirmative defenses which must be specifically pled and proved to be available as a defense. Tex.R.Civ.P. 94; *Fireman's Fund Insurance Company v. Abilene Livestock Auction Company*, 391 S.W.2d 147 (Tex.Civ. App.—Dallas 1965, writ ref'd n. r. e.). The record is devoid of any pleadings or proof to support such defenses. Having failed to plead or prove such defenses, appellant waived the same. It is well settled that an affirmative defense cannot be raised for the first time on appeal. *T.I.M.E., Inc. v. Maryland Casualty Company*, 157 Tex. 121, 300 S.W.2d 68 (1957).

The judgment of the trial court is affirmed.