Roy BARNES and wife, Bonnie Lee
Barnes, Plaintiffs,

v.

LONE STAR STEEL COMPANY,
Defendant and Third-Party
Plaintiff-Appellant,

v.

SEVEN–O CORPORATION, Third-Party
Defendant-Appellee.

No. 79–4082.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 17, 1981.

Rehearing and Rehearing En Banc
Denied June 10, 1981.

**994**

Strasburger & Price, Royal H. Brin, Jr., Dallas, Tex., for defendant and third-party plaintiff-appellant.

Nichols & Parker, E. Lawrence Merriman and Rex A. Nichols, Longview, Tex., for third-party defendant-appellee.

Before CHARLES CLARK, TATE and WILLIAMS, Circuit Judges.

PER CURIAM:

In this appeal, Lone Star Steel Company challenges the denial of its third-party claim for indemnity against Seven-O Corporation. We reverse.

Lone Star Steel Company contracted with Seven-O Corporation for needed repairs to the roof on its central maintenance shop, located in Lone Star, Texas. During the course of this work, Roy Barnes, an employee of Seven-O, fell through the roof and was injured. Barnes sued Lone Star in the district court. Lone Star filed a third-party complaint against Seven-O asserting a contractual right to indemnity. Although the Texas Worker's Compensation Law precludes a suit by Barnes against his employer, it does not preclude an indemnity claim by a third party against the employer pursuant to a written indemnity agreement existing before the injury. Tex.Rev.Civ. Stat.Ann. art. 8306, § 3 (Vernon 1967).

Barnes claimed that Lone Star was negligent in allowing Seven-O to begin, and to continue, work on the roof when Lone Star knew that Seven-O was not complying with the safety requirements of the contract, in which Seven-O undertook to abide by incorporated federal and state safety and health regulations. The jury returned a verdict for Barnes, finding by special verdict that Lone Star was 100% negligent and that Barnes and Seven-O were not negligent. The jury awarded Barnes $1.5 million in compensatory damages and $1 million in punitive damages. After remittitur, judgment was entered for $1.9 million in favor of Barnes against Lone Star. Seven-O was awarded judgment in Lone Star's third-party action. Lone Star settled with Barnes, reserving the right to appeal as against Seven-O, as they have done.

Our holding that Lone Star is entitled to indemnity under its contract with Seven-O obviates the need to address other issues it raises.

The provisions of the "Purchase Order" pertinent to the indemnity claim include:[1]

THIS PURCHASE ORDER IS CONDITIONED UPON RECEIPT OF SIGNED COPY OF PURCHASE ORDER ACKNOWLEDGMENT, WHICH INCLUDES GENERAL CONDITIONS COVERING WORK ON PURCHASER'S PREMISES, COPIES ATTACHED.

LONE STAR STEEL PLANT RULES AND SAFETY REGULATIONS WILL APPLY TO ALL VENDOR EMPLOYEES. COPY OF PLANT RULES AND SAFETY REQUIREMENTS ARE ATTACHED.

Article 13 of the "General Conditions" provides:

13. . . Seller (Seven-O) shall be responsible for all damages and shall indemnify and save Purchaser (Lone Star) harmless from and against all damages and liability, which may arise out of the failure of Seller to secure and pay for any such licenses and permits or to comply fully with any and all applicable laws, ordinances and regulations.

[1]. Apparently only part of the contract between Lone Star and Seven-O was submitted to the jury. Thus, it is unclear whether the entire contract was admitted into evidence. We assume, however, that the district judge considered the entire contract in ruling on the indemnity claim. On appeal, both parties urge this court to consider the entire contract. Because we base our holding on the document, we have done so.

Further, a letter attached to the contract addressed to "All Contract Personnel" from Lone Star's Works Manager states: "Contractors and their employees will comply with all rules and regulations as prescribed by the Occupational Safety & Health Act and the Texas Occupational Safety Board. Copies of the O.S.H.A. Safety & Health regulations for construction work are available upon request."

Finally, the "General Plant Rules and Basic Safety Rules for Contractors and sub-Contractors at Lone Star Steel Company" provide in part: "Contractors shall comply with all applicable State and Federal Safety Laws enacted by the Texas Occupational Safety Board and the Occupational Safety and Health Act."

 The parties have analyzed the issue in this appeal as coming under the well-developed Texas law on indemnification for the indemnitee's negligence. Such agreements are not against public policy in Texas. The determinative question is interpretation, not enforceability. *Spence & Howe Construction Co. v. Gulf Oil Corp.,* 365 S.W.2d 631, 633 (Tex.1963). The recent case of *Eastman Kodak Co. v. Exxon Corp.,* 603 S.W.2d 208 (Tex.1980), indicates that as a general rule Texas requires that an agreement to indemnify another on account of his own negligence be expressed in those words. *See McClane v. Sun Oil Co.,* 634 F.2d 855, 857 (5th Cir. 1981). For reasons discussed below, we do not believe that a Texas court would analyze this case under the *Eastman Kodak* line of cases.

 Seven-O argues, and Lone Star seems to assume, that the existence of the jury finding that Seven-O was not negligent and Lone Star was 100% negligent brings this case under the Texas law regarding indemnification for the indemnitee's negligence. Texas regards its requirement of clear expression as a defense to an indemnity contract. In order to invoke this defense, the indemnitor must establish that the injury was caused by the indemnitee's negligence. *Copeland Well Service, Inc. v. Shell Oil Co.,* 528 S.W.2d 317 (Tex.Civ.App. —Tyler 1975, no writ.) Seven-O's position

is that the jury verdict establishes this and that the settlement makes the validity of the jury verdict a moot issue. The only theories of Lone Star's liability presented to the jury were that Lone Star allowed Seven-O to begin and continue work knowing Seven-O was not complying with the safety requirements of the contract. Given this state of facts, the jury could not have found Lone Star negligent except in failing to rectify Seven-O's negligence. Lone Star could not violate any duty toward Barnes unless Seven-O first violated the same duty to Lone Star. While the settlement between Lone Star and Barnes may moot any attack on the validity of the jury verdict as between Lone Star and Barnes, it does not control Seven-O's contractual undertakings to Lone Star. Without a showing of some independent negligence on the part of Lone Star, the defense of "no indemnity for the indemnitee's negligence unless clearly expressed" is not available to Seven-O. Though no direct Texas precedent has been found, our conclusion is justified in view of *Weaver v. City of Waco,* 575 S.W.2d 426 (Tex.Civ.App.—Waco 1978, no writ), and *Copeland Well Service.* In *Weaver,* the plaintiff was injured when he drove his automobile into a drainage ditch under construction. He first sued the contractor, but the jury found no negligence on the contractor's part. The Weavers' suit against the City for negligently hiring the contractor was dismissed because the City "had no more than a derivative liability which could be invoked only had the Weavers' injuries been due to the negligence of the Contractor." Id. at 430. Were the Texas Supreme Court to be faced with the issue of whether to allow the indemnitor to invoke the defense requiring clear expression of an intent to indemnify for the indemnitee's negligence, we believe it would combine the *Weaver* holding with that in *Copeland Well Service* to hold that an indemnitor must show that the injury or damage was caused, at least in part, by some negligence of the indemnitee other than negligence which derives from the indemnitor's negligence.

Since Lone Star's only negligence, alleged or proved, had to be derived from Seven-O's negligence, Seven-O cannot assert the defense just discussed. Thus, the Texas cases dealing with that defense and the exceptions to the "express negligence" requirement are inapposite.

Under Texas law, absent this defense, indemnity agreements, like other contracts, are enforced according to their terms. *See Sun Oil Co. v. Renshaw Well Service, Inc.*, 571 S.W.2d 64, 68 (Tex.Civ. App.—Tyler 1978, writ ref'd n.r.e.). Article 13 of the parties' contract requires Seven-O to indemnify Lone Star for liability arising out of Seven-O's failure to comply fully with all applicable laws, ordinances, and regulations. Though the first sentence of this article deals with building permits and similar regulations, in light of the fact that Texas and federal safety regulations were specifically incorporated into the contract, the last sentence of article 13 should be read to include those safety regulations. The liability assessed against Lone Star arose out of Seven-O's failure to comply with applicable regulations. *See Sun Oil Co.*, 571 S.W.2d at 69–71. Thus, article 13 requires Seven-O to indemnify Lone Star for the liability they incurred. Lone Star was entitled to judgment on its indemnity claim against Seven-O.[2]

The judgment of the district court on the third-party claim is reversed and the case remanded to the district court for further proceedings in conformity with this opinion.

REVERSED AND REMANDED.

---

**2.** Mrs. Barnes also received a jury verdict of $360,000. Lone Star's settlement was with both plaintiffs. Our holding requires Seven-O to indemnify Lone Star for the payments made in settlement of Mrs. Barnes' claims.