IDEAL LEASE SERVICE, INC.,
Petitioner,

v.

AMOCO PRODUCTION CO.,
INC., Respondent.

No. C–2315.

Supreme Court of Texas.

Dec. 31, 1983.

Rehearing Denied Feb. 8, 1984.

Butler & Binion, Robert C. Floyd and Timothy D. Riley, Houston, for petitioner.

McLeod, Alexander, Powell & Apffel, James B. Galbraith, Galveston, for respondent.

BARROW, Justice.

This appeal involves the construction of an indemnity contract. Terry Thompson (Thompson) sued Amoco Production Company (Amoco) and Ideal Lease Service, Inc. (Ideal) to recover for personal injuries. Amoco cross-claimed Ideal seeking contractual indemnity in the event Thompson was awarded recovery. In a jury trial, special issues were answered favorably to Thompson and Ideal and against Amoco. Judgment was rendered whereby Thompson recovered his damages from Amoco, and Amoco was denied relief on its cross-claim. On appeal, the court of appeals affirmed in part and reversed in part the judgment of the trial court and remanded a portion of the cause for a new trial. 657 S.W.2d 824. Full settlement has been made with Thompson, and he is not a party to this appeal. We reverse the judgment of the court of appeals and affirm the trial court judgment.

Amoco owns and operates several oil and gas properties in the Bay City, Texas area. Maintenance of these properties is provided by lease service companies on Amoco's list of approved contractors. Ideal, among others, was an approved Amoco contractor and had entered into a "Well and Lease Service Master Contract" with Amoco. This contract obligated Ideal to provide miscellaneous maintenance services on Amoco lease sites as requested by Amoco. Depending upon the nature of Amoco's requests, Ideal would send out one of its own employees or it would hire someone temporarily to do a job requested by Amoco.

In December of 1980, Amoco contacted Ideal to furnish a welder. At that time, Ideal had no welders employed. Therefore, Ideal secured the services of Thompson to do the welding that Amoco requested. The arrangement between the parties was that Thompson billed Ideal for his time, and Ideal then submitted its bill to Amoco to cover Thompson's fee plus a small commission. Thompson sustained his injuries as the result of a flash fire that occurred on Amoco's Bay City lease site on December 29, 1980.

The contractual provision that we must construe is set forth in the Amoco-Ideal contract as follows:

10. In order to eliminate controversies between Contractor, its Subcontractors and Amoco and its joint owners, if any, and their respective insurers, Contractor assumes all liability for and hereby agrees to defend, indemnify and hold Amoco, its joint owner or owners, if any, and their insurers, harmless from and against any and all losses, costs, expenses and causes of action, including attorney's fees and court costs, *for injuries to and death of Contractor's and its Subcontractor's employees,* arising out of, incident to, or in connection with any and all operations under this contract and whether or not such losses, costs, expenses and causes of action are occasioned by or incident to or the result of the negligence of

Amoco, its joint owner or owners, if any, and its agents, representatives and employees. . . . (emphasis ours).

The court of appeals found that the trial court had erred in refusing Amoco's requested special issues and that the charge as submitted misled the jury and did not include the controlling issues regarding Amoco's right to recover from Ideal on its cross-claim. We need not reach these issues for we have determined that, as a matter of law, Thompson was not covered by the indemnity provision on which Amoco's cross-claim is based.

The clear language of the indemnity provision limited Ideal's obligation to indemnify Amoco for injuries to "Contractor's [Ideal's] and its Subcontractor's employees." Amoco has admitted that Thompson was an independent contractor, a conclusion also reached by the court of appeals. Thus, the sole question we must decide is whether an independent contractor's injuries fall within the parameters of this indemnity provision.

■ At the time of the accident, Thompson was the owner and operator of a sole proprietorship known as Blue Streak Welding Service. There were no other persons involved in this venture, and it had no employees. Blue Streak Welding Service was, in law and in fact, one and the same as Thompson because a sole proprietorship has a legal existence only in the identity of the sole proprietor. This sole proprietorship was an independent contractor under the facts of the case. Since it is undisputed that Thompson was an independent contractor, he may not be deemed an employee. We have implicitly held that these capacities are mutually exclusive. *Newspapers, Inc. v. Love,* 405 S.W.2d 300 (Tex.1966); *Great Western Drilling Co. v. Simmons,* 157 Tex. 268, 302 S.W.2d 400 (1957). *See generally* Restatement (Second) Agency § 2, comm. b (1958).

■ On numerous occasions, this Court has been faced with the construction of indemnity contracts, and the applicable

guidelines are well established. Under general contract law principles, the primary concern of courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *Mitchell's, Inc. v. Friedman,* 157 Tex. 424, 303 S.W.2d 775, 778 (1957). Since the provision in question is unambiguous, we must determine the rights and liabilities of Amoco and Ideal by giving legal effect to the contract as written. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 728 (Tex.1981).

The contract before us clearly limits Ideal's liability to injuries to "Contractor's and its Subcontractor's *employees*." However, Amoco urges that Thompson was "hired" by Ideal, was paid by Ideal, and thus was an employee of Ideal. We cannot agree. The evidence elicited at trial established that Thompson sustained his injuries while serving as an independent contractor, not an employee.

▮ Amoco urges that the overall intent of the parties evidences that they contemplated that all injuries sustained by persons doing work on the Amoco lease were included within the terms of the indemnity agreement. Amoco further argues that if Blue Streak Welding Service had been incorporated, then Thompson would have been its employee, and he would have been covered by the contract. We agree that the intention of the parties is the primary concern of the courts in interpreting a contract, but, unless ambiguous, we must discern that intent from the contract itself. *Ohio Oil Co. v. Smith,* 365 S.W.2d 621 (Tex.1963). We are precluded from expanding the scope of this coverage beyond that stated in the contract based solely upon what this Court may perceive to be the improperly expressed intentions of the parties. *Accord International-Great Northern R.R. Co. v. Lucas,* 123 Tex. 480, 99 S.W.2d 297 (1936).

▮ We conclude that the indemnity contract entered into by Amoco and Ideal did not cover the injury sustained by Terry Thompson because Thompson was not an "employee" of a subcontractor or contractor. Further, we may not expand the parties' rights or responsibilities beyond the limits agreed upon by them in the contract. *Ohio Oil Co. v. Smith,* 365 S.W.2d at 627; *Carroll v. Paetznick,* 603 S.W.2d 381, 383 (Tex.Civ.App.—Austin 1980, writ ref'd n.r. e.).

The judgment of the court of appeals is reversed and that of the trial court is affirmed.