CONTINENTAL STEEL
COMPANY, Appellant,

v.

H.A. LOTT, INC., Appellee.

No. 05–87–01072–CV.

Court of Appeals of Texas,
Dallas.

May 22, 1989.

Rehearing Denied June 28, 1989.

H. Norman Kinzy, Mark M. Donheiser, Phillip W. Gilbert, Dallas, for appellant.

Cynthia Hollingsworth, George H. Kolb, Dallas, for appellee.

Before WHITHAM, STEWART and LAGARDE, JJ.

## ON MOTION FOR REHEARING

STEWART, Justice.

We grant appellee's motion for rehearing, withdraw our prior opinion, and substitute this opinion as the opinion of the Court.

This appeal concerns the construction of an indemnity agreement between appellant Continental Steel Company (Continental) and appellee H.A. Lott, Inc., (Lott). The sole contested issue is whether the agreement obligates Continental to indemnify Lott for Lott's costs and expenses incurred in its successful defense of a claim based solely on Lott's alleged negligence. We hold that the agreement does create such an obligation; therefore, we affirm the trial court's judgment on the indemnity claim.

Continental was a subcontractor for Lott, the general contractor, at a construction site in Dallas, Texas. The parties' subcontract agreement contained provisions whereby Continental agreed to indemnify Lott for certain claims arising from work under the subcontract. When Gregory Williams was injured at the construction site, Union Standard Insurance Company paid Williams workers' compensation. As Williams' subrogee, the company then filed this suit against Lott and several subcontractors to recoup its payments pursuant to article 8307, section 6a of the Texas Revised Civil Statutes. Williams intervened as a plaintiff on his own behalf. Williams' petition alleged that, through various negligent acts and omissions, Lott had proximately caused his injuries. Prior to trial, the claims against all the other defendants were either severed or dismissed.

Lott joined Continental on a claim of indemnity. The parties agreed that the indemnity issue would be reserved until after the trial on the claims against Lott. After a two-week trial, the jury found that Lott was not negligent. The trial court entered judgment that Williams and Union Standard Insurance take nothing and taxed all costs against them.

The trial court also rendered judgment in Lott's favor on its indemnity claim against Continental under its subcontract with Continental. The court awarded Lott its attorneys' fees and costs incurred in successfully defending the lawsuit. Continental argues that this award of attorneys' fees was improper because no indemnity provision in the subcontract covers this loss.

## THE AGREEMENT

In its third-party petition and on appeal, Lott has based its claim for indemnity on several paragraphs in the contract between Lott and Continental. However, we conclude that we need only consider the provisions of paragraph 10(a) to dispose of this appeal. Paragraph 10(a) provides as follows:

10.(a) Subcontractor [Continental] hereby agrees to indemnify and save harmless Contractor [Lott] from and against all claims, demands, damages, losses, expenses, costs, liabilities, injuries, and causes of action arising from injury to persons or damage to property arising out of, connected with, or incident to the performance of the work hereunder, except in cases of sole negligence on the part of the Contractor, and Subcontractor will defend any and all such actions brought against Contractor and will pay any judgment rendered in such suits and will reimburse and indemnify Contractor for all expenditures or expenses including court costs and counsel fees, made or incurred by Contractor by reason of such suits.

## DISCUSSION

Continental argues that the provisions of paragraph 10(a) do not specifically speak to indemnity for the consequences of the indemnitee's own negligence; therefore, this paragraph violates the express negligence doctrine pronounced in *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705, 708 (Tex.1987). It argues that the adoption of the express negligence doctrine was simply one expression of the court's concern with ingeniously broad and vague indemnity contracts which could be, and were, construed to cover matters not within the contemplation of the parties; that the *Ethyl* court enunciated a policy disapproving *all* ambiguous indemnity provisions, not just those related to the indemnitee's own negligence; and that, because there is no specific provision for indemnifying Lott for its attorney fees in defending this action, whether successful or not, Continental should not be held liable for Lott's defense costs.

■ Lott, on the other hand, contends that the *Ethyl* court was concerned only that liability for an indemnitee's own negligence be expressly stated and the requirements of the express negligence doctrine do not apply to the other separate and distinct obligations contained in the indemnity provision; that the jury found Lott was not negligent; that the defense costs were, thus, not incurred due to its negligence but due to plaintiffs' filing invalid claims which arose out of the performance of work under the subcontract; and that, therefore, the express negligence rule is inapplicable to the issue before this court.

We agree with Lott that the *Ethyl* court addressed only liability for the indemnitee's own negligence, whether sole, joint or concurrent. *Ethyl*, 725 S.W.2d at 708. There, the indemnitee had been found negligent by a jury. The Supreme Court recently repeated that its purpose in adopting the express negligence rule is "to require scriveners to make it clear when the intent of the parties is to exculpate an indemnitee for the indemnitee's own negligence." *Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 725 (Tex.1989).

The Supreme Court has not addressed the question of whether the express negligence rule applies when the indemnitee has been found *not* negligent. For the following reasons, we decline to extend this rule to indemnity provisions covering losses which do not result from the indemnitee's negligence.

Cases arising under the clear and unequivocal rule, which applied prior to the *Ethyl* court's adoption of the express negligence doctrine, did not apply that rule to all indemnity provisions. To the contrary, if an indemnitee could prove he was not negligent as a matter of law, he was entitled to a summary judgment on a claim for which indemnity was provided. *Sira & Payne v. Wallace & Riddle*, 484 S.W.2d 559, 561 (Tex.1972). Moreover, it was the indemnitor's burden to establish the indemnitee's negligence to avoid the duty to indemnify. *Delta Eng'g Corp. v. Warren Petroleum*, 668 S.W.2d 770, 772 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Copeland Well Serv., Inc. v. Shell Oil Co.*, 528 S.W.2d 317, 320 (Tex.Civ.App.—Tyler, 1975, writ dism'd w.o.j.).

The *Copeland* case is closely analogous on its facts to the case at bar. Shell, the indemnitee, sought to recover from Copeland, the indemnitor, the expenses it incurred in defending and ultimately reasonably settling a negligence action against it. Copeland contended that the indemnity agreement was unenforceable under the clear and unequivocal rule. The trial court found that Shell was not negligent and awarded it both the settlement amount and its attorney fees and other expenses incurred in defending plaintiff's suit. The Court of Civil Appeals affirmed; it noted that an indemnitor's defense could not be based on the clear and unequivocal rule unless the indemnitee's negligence caused the casualty made the basis of indemnitee's suit on the contract. *Id.* at 320. Because Copeland failed to obtain a finding or to conclusively establish that Shell was negligent, *the validity of the indemnity agreement never came into play,* and the Court did not reach the question of whether the indemnity agreement was sufficient to pro-

**516**

tect Shell against its own negligence. *Id. Accord Delta Drilling Co. v. Cruz,* 707 S.W.2d 660, 668–69 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *M.M. Sundt Constr. Co. v. Contractors Equip. Co.,* 656 S.W.2d 643, 645 (Tex.App.—El Paso 1983, no writ). We can discern no indication that the *Ethyl* court intended to change the law espoused in these cases; consequently, we conclude that they have continued validity under the express negligence doctrine. Accordingly, we hold that the express negligence doctrine has no application to the determination of an indemnitor's duty to indemnify when an indemnitee is found not negligent and, thus, is seeking reimbursement for losses that do not arise from consequences of its own negligence. To the contrary, we do not reach the enforceability issue under the express negligence doctrine unless the indemnitee *is* seeking reimbursement for the consequences of its own negligence.

Continental also argues that its duty to indemnify is not dependent on the outcome of the underlying suit but on the nature of the claims that plaintiff asserts against the indemnitee. *See Gulf Coast Masonry v. Owens—Illinois, Inc.,* 739 S.W.2d 239, 239 (Tex.1987); *Atlantic Richfield Co. v. Petroleum Personnel, Inc.,* 758 S.W.2d 843, 844–45 (Tex.App.—Corpus Christi 1988), *rev'd on other grounds,* 768 S.W.2d 724 (Tex.1989); *Adams v. Spring Valley Constr. Co.,* 728 S.W.2d 412, 414 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Otherwise, it contends, the courts in these summary judgment cases would not have ruled the indemnity provisions at issue unenforceable under the express negligence doctrine before the negligence of the respective indemnitees had been determined. Therefore, it maintains that, because this underlying suit is based on Lott's own negligence, the express negligence doctrine renders the indemnity provision unenforceable, and the fact that Lott was found not negligent has no bearing on its duty to indemnify.

Continental further asserts that if Lott's theory is correct, that the duty to indemnify in this case did not arise until Lott was found not negligent, then the courts in *Gulf Coast Masonry, Atlantic Richfield,* and *Adams* committed jurisdictional error of constitutional proportions because they issued advisory opinions; that is, a subsequent finding of negligence would mean that the indemnity provision was unenforceable, but a finding of no negligence would result in an enforceable indemnity provision. We disagree with Continental's contentions.

Continental erroneously assumes that the express negligence doctrine applies regardless of the nature of an indemnitee's claim for indemnity. Lott's claim is for costs incurred in the successful defense of a negligence claim. In the cited cases, the *only* issue was whether the indemnitor would be liable for any judgment rendered against the indemnitee in the underlying suit. This issue could be determined by examining the nature of the claims asserted by the plaintiff and by construing the indemnity agreement. In all three cases, plaintiff's suit was grounded on the indemnitee's negligence. In each of these cases, the court determined that the duty to indemnify for the consequences of the indemnitee's own negligence would *never* arise because the indemnity provision allegedly covering *this type of loss* did not meet the requirements of the express negligence doctrine. Because none of these suits addressed the indemnitor's liability when the indemnitee is found not negligent, we conclude they are inapplicable to the issue before this court.

Continental next argues that, because the underlying suit was based on Lott's negligence, a claim allegedly excluded from the indemnification clause under the express negligence test, Lott is not entitled to recover its costs in defending against this noncovered claim. It maintains that the duty to indemnify is closely analogous to the duty to defend in an insurance context, where the duty to defend depends on whether the plaintiff's pleaded allegations are within or outside the scope of coverage under the policy, and if the allegations are outside the scope of coverage, there is no duty to defend, regardless of the outcome

of the suit. *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973).

■ We agree that the duty to defend is not dependent on the outcome of the suit but upon the nature of the claim asserted by plaintiff; however, we disagree that plaintiff's allegations determine the duty to indemnify. Instead, the duty to indemnify is determined from the terms of the indemnity agreement. *Ideal Lease Serv. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983). In construing indemnity contracts, the applicable guidelines are well established. The primary concern of courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *Id.* Those intentions are determined by applying the same rules of construction as are applied to other contracts. *Id.; Fisher Constr. Co. v. Riggs*, 320 S.W.2d 200, 209 (Tex.Civ.App.—Houston), *rev'd on other grounds*, 160 Tex. 23, 325 S.W.2d 126 (1959). However, the intent to indemnify the indemnitee for the consequences of its own negligence must also meet the requirements of the express negligence rule. *Ethyl*, 725 S.W.2d at 708. Having found the express negligence doctrine inapplicable to our facts, we apply general contract principles to ascertain whether Lott has a right to indemnity for its defense costs.

■ Under the relevant terms of paragraph 10(a), Continental agreed to indemnify Lott against all claims, demands, losses, expenses, and costs arising from injuries to persons arising out of, connected with, or incident to the performance of the work under the subcontract. Our record does not reveal the facts surrounding Williams' injury, but Continental does not contend that Williams' cause of action did not arise out of or was not connected with or incident to the performance of the work under Continental's subcontract with Lott. In addition, Lott affirmatively asserts, without contradiction from Continental, that plaintiff's claim arose under this contract. Therefore, we conclude that Williams' injury arose from or was connected with the performance of work under the subcontract. Based on this conclusion, we hold that Williams' claim was covered by the indemnity agreement. Because Lott was found not negligent, we need not address the effect that a defense based on the express negligence doctrine would have on Lott's right to recover its litigation costs.

■ Nevertheless, Continental contends that it is not liable for Lott's litigation expense because these costs are not specifically covered by the agreement. However, Texas law dictates otherwise. The litigation costs for defending an indemnified claim may be recovered either upon a right of indemnity implied by law or arising under the contract, because otherwise an indemnitee would not be fully protected and saved harmless against claims covered by the indemnity agreement. *Fisher*, 320 S.W.2d at 211. There is no requirement that the agreement expressly stipulate that these costs are to be indemnified; they are expenses or costs arising from a personal injury connected with or incident to the performance of the work from which Lott is to be saved harmless. *Patch v. Amoco Oil Co.*, 845 F.2d 571, 572 (5th Cir.1988) (interpreting Texas law). Further, we agree with the court in *Patch* that "nothing in the reasoning or holding of *Ethyl* ... bears on this issue or indicates that the holding in *Fisher* is not good Texas law." *Id.* at 573. We reject Continental's contention that it has no liability because Lott's defense costs are not specifically covered by the agreement.

Based on the foregoing authority, we hold that Lott's defense costs, incurred in the successful defense of a claim for which indemnity was provided, are recoverable from Continental under the indemnity agreement at issue. Accordingly, we overrule Continental's sole point of error.

The judgment is affirmed.

LAGARDE, J., dissents.

LAGARDE, Justice, dissenting.

I respectfully dissent. This appeal concerns the construction of an indemnity agreement between appellant Continental Steel Company (Continental) and appellee H.A. Lott, Inc. (Lott). The sole contested

issue is whether the agreement obligates Continental to indemnify Lott for Lott's attorney fees incurred in its successful defense of a claim based solely on Lott's alleged negligence.

I would hold that the indemnity agreement is unenforceable as a matter of law because it does not satisfy the "express negligence test"; consequently, it does not create such an obligation. I would, therefore, reverse and render on the indemnity claim.

## FACTUAL BACKGROUND

Continental was a subcontractor for Lott, the general contractor, at a construction site in Dallas, Texas. The parties' subcontract agreement contained provisions whereby Continental agreed to indemnify Lott for certain claims arising from work under the subcontract. When Gregory Williams was injured at the construction site, Union Standard Insurance Company paid Williams workers' compensation. As Williams's subrogee, the insurance company sued Lott and several subcontractors to recoup its payments pursuant to article 8307, section 6a of the Texas Revised Civil Statutes. Intervening as a plaintiff in his own behalf, Williams alleged in his petition that, through various negligent acts and omissions, Lott had proximately caused his injuries. Prior to trial, the claims against all the other defendants were either severed or dismissed. Williams did not sue Continental; however, Lott joined Continental as a third party on a claim of indemnity.

In paragraph II of its third party petition, Lott asserts:

In the event the plaintiff, Union Standard Insurance Company (Union) makes any recovery against Lott in this cause, Lott is entitled to judgment against Continental for the full amount of such judgment, together with reasonable attorney's fees and costs, under the ... indemnity provisions [paragraph 10(a) and "Attachment A"] contained in the contract between Lott and Continental.

Lott, therefore, sought indemnity for its own negligence. In paragraph III, Lott sought reimbursement for "all expenses and attorney's fees Lott reasonably incur[red] in *defending itself*" even if no judgment were obtained. (Emphasis supplied.) In its response to Continental's motion for judgment, Lott alleged that it "was forced to incur attorney's fees and costs because Continental refused to accept Lott's defense when the suit was first filed." Lott attached to the affidavit concerning attorney fees a letter dated August 8, 1984, tendering Lott's defense, which Continental, who was not otherwise a party, refused. Lott argues that the duty to defend and the obligation to indemnify are separate and distinct issues. Based on the foregoing, however, I conclude that the "duty to defend" was put into issue by Lott's pleadings which reflect that Lott sought reimbursement of attorney fees it incurred because of Continental's failure to defend. Where, as here, the basis of the indemnity claim is attorney fees incurred because of a failure to defend, I cannot agree that the issues are separate and distinct.

The parties agreed that the indemnity issue would be reserved until after the trial on Williams's claims against Lott. After a two-week trial, the jury found that Lott was not negligent. The trial court entered judgment that Williams and Union Standard Insurance take nothing and taxed all costs against them. The trial court also rendered judgment in Lott's favor on its indemnity claim against Continental under their subcontract, awarding Lott its attorney fees and costs incurred in successfully defending the lawsuit. Continental argues that this award of attorney fees was improper because no indemnity provision in the subcontract covers this loss.

## THE AGREEMENT

Lott based its claim for indemnity on the following provisions in the contract between Lott and Continental.

10.(a) Subcontractor [Continental] hereby agrees to indemnify and save harmless Contractor [Lott] from and against all claims, demands, damages, losses, expenses, costs, liabilities, injuries, and

causes of action arising from injury to persons or damage to property arising out of, connected with, or incident to the performance of the work hereunder, except in cases of sole negligence on the part of the Contractor, and Subcontractor will defend any and all such actions brought against Contractor and will pay any judgment rendered in such suits and will reimburse and indemnify Contractor for all expenditures or expenses including court costs and counsel fees, made or incurred by Contractor by reason of such suits.

\*   \*   \*   \*   \*   \*

### ATTACHMENT "A"

I. Subcontractor [Continental] will observe Contractor's [Lott's] basic safety policy and all applicable provisions of the Occupational Safety and Health Act of 1970 and the regulations thereto, and Article 5182–1 of the Texas Revised Civil Statutes and shall assist in maintaining working conditions which are free of unsanitary, hazardous, or dangerous conditions and shall assist in protecting the health and safety of any laborer or mechanic employed in the performance of this Contract. Subcontractor shall indemnify and save harmless the Contractor and Owner from all liability and/or loss, without limit, incurred in whole or in part, directly or indirectly, as a result of any breach of this obligation by Subcontractor, its agents, employees, materialmen, and subcontractors.

On appeal, Lott re-urges those two provisions and, additionally, urges as a further basis for its right to indemnity the following provisions:

8.(a) Subcontractor shall comply with all federal, state and municipal laws, codes, regulations and ordinances effective where the work under this contract is to be performed, and to pay all sales and or use taxes and contributions imposed or required by any law for any employment insurance, pensions, old age retirement funds, or similar purposes, in respect to the work under this contract and the

employees of Subcontractor in the performance of said work.

\*   \*   \*   \*   \*   \*

20. Should Contractor employ an attorney to enforce any of the provisions hereof, or to protect its interest in any matter arising under this contract, or to prosecute or defend any suit resulting from this contract, or to recover on the surety bond given by Subcontractor under this contract, Subcontractor and his surety, jointly and severally, agree to pay Contractor all reasonable costs, charges, expenses and attorney's fees expended or incurred therein. . . .[1]

## DISCUSSION

Continental argues that "Attachment A" of the subcontract will not provide a basis for indemnity because it is contingent on a breach by Continental, its agents, employees, materialmen, or subcontractors, of its obligation to take certain safety precautions set out in that clause. Continental urges that because there is no evidence of such a breach and no jury finding on that issue, that provision will not support an award on indemnity.

Lott argues that "Attachment A" and paragraphs 8(a) and 20 provide a proper basis for indemnity under the subcontract because Continental agreed, under paragraph 20, to reimburse Lott for attorney fees spent by Lott in any lawsuit "arising under" or "resulting from" the contract and further argues that paragraphs 8(a) and "Attachment A" imposed on Continental, not Lott, the duty to keep the construction site safe. Lott asserts that because the insurance carrier alleged in its petition that Lott was negligent for failing to take safety precautions for which Continental was responsible under the subcontract, Lott was forced to defend a suit "arising under" or "resulting from" the contract. Consequently, Lott asserts that an award of indemnity was proper. Lott argues that the "express negligence doctrine" does not apply here because Lott is not seeking re-

---

1. The last sentence of paragraph 20 reads "Subcontractor agrees that any suit filed under this contract must be filed in Harris County, Texas." However, the issue of venue was not raised.

imbursement for damages based on its own negligence but, rather, is seeking reimbursement for attorney fees incurred in defending a suit "arising under" or "resulting from" the contract. Relying primarily on federal authority, Lott argues that, because of the jury's negative finding on negligence, there is no need to reach the issue of whether paragraph 10(a) complies with the express negligence doctrine.

Lott relies on *Meloy v. Conoco, Inc.*, 817 F.2d 275 (5th Cir.1987); *O'Neal v. International Paper Co.*, 715 F.2d 199 (5th Cir. 1983); and *Stephens v. Chevron Oil Co.*, 517 F.2d 1123 (5th Cir.1975). All three cases are decisions interpreting Louisiana law. Additionally, Lott relies on *Leonard v. Alcoa Co. of America*, 767 F.2d 134, 136–37 (5th Cir.1985) (interpreting Texas law), where the court determined that the "clear and unequivocal rule" had no application where plaintiff had successfully defended negligence claims and only sought recovery of costs expended in its successful defense. Citing *M.M. Sundt Construction Co. v. Contractors Equipment Co.*, 656 S.W.2d 643, 645 (Tex.App.—El Paso 1983, no writ) and *Delta Drilling Co. v. Cruz*, 707 S.W.2d 660, 668 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.), Lott argues that because it has incurred a loss not due to its own negligence and within the terms of its indemnity contract, it is entitled to reimbursement of that loss.

On rehearing, we were urged by an *amicus curiae* to also consider *Sira & Payne, Inc. v. Wallace & Riddle*, 484 S.W.2d 559 (Tex.1972) and *Barnes v. Lone Star Steel Co.*, 642 F.2d 993 (5th Cir.1981). Conceding that those cases were decided under the "clear and unequivocal rule," the *amicus* nevertheless strongly urges this Court to view *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705, 708 (Tex.1987), as an evolutionary, not a revolutionary, development. Continental, on the other hand, argues that this case is controlled by the express negligence test pronounced in *Ethyl* and that the failure to satisfy that test precludes an indemnity award.

I agree with Continental that *Ethyl* does control and that, as a matter of law, the indemnity agreement is unenforceable. In *Ethyl*, the Supreme Court changed the rules concerning the construction and enforcement of indemnity provisions. The Court held that parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms within the four corners of the contract. *Ethyl*, 725 S.W.2d at 708. Intent to shift the burden of an indemnitee's negligence to an indemnitor must be specifically stated in the instrument. *See Gulf Coast Masonry, Inc. v. Owens–Illinois, Inc.*, 739 S.W.2d 239, 239 (Tex.1987). The express negligence doctrine adopted in *Ethyl* replaced the similar, but less strict, "clear and unequivocal" rule set forth in *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818, 822 (Tex.1972). Broad, general language arguably covering "any loss" is insufficient to shift the burden of an indemnitee's negligence to an indemnitor. *See Singleton v. Crown Central Petroleum Corp.*, 729 S.W.2d 690, 691 (Tex.1987).

The majority conclude that the court in *Ethyl* did not enunciate a policy disapproving *all* ambiguous indemnity provisions, but rather only addressed liability for the indemnitee's own negligence, whether sole, joint, or concurrent. *Ethyl*, 725 S.W.2d at 708. The majority, therefore, decline to extend the express negligence rule to indemnity provisions covering losses which do not result from the indemnitee's negligence. Relying on pre-*Ethyl* cases, and with particular emphasis on *Copeland Well Service, Inc. v. Shell Oil Co.*, 528 S.W.2d 317, 320 (Tex.Civ.App.—Tyler, 1975, writ dism'd), the majority conclude that because of the jury's negative finding as to Lott's negligence, "*the validity of the indemnity agreement never came into play.*" (Emphasis original.) Accordingly, the majority hold that the express negligence doctrine has no application to the determination of an indemnitor's duty to indemnify when an indemnitee is found not negligent. The majority further conclude that the enforceability issue under the express negligence doctrine is not reached unless the indemnitee *is* seeking reimbursement for the conse-

quences of its own negligence. I cannot agree.

The court in *Ethyl* stated:

> The intent of the scriveners is to indemnify the indemnitee for its negligence, yet be just *ambiguous* enough to conceal that intent from the indemnitor. The result has been a plethora of law suits to construe those *ambiguous* contracts. We hold the better *policy* is to cut through the *ambiguity* of those provisions and adopt the express negligence doctrine.... Under the doctrine of express negligence, the intent of the parties must be specifically stated within the four corners of the contract.

*Ethyl,* 725 S.W.2d at 707–08.

The supreme court has just recently observed that "[t]he purpose behind the adoption of the express negligence rule is to require scriveners to make it clear when the intent of the parties is to exculpate an indemnitee for the indemnitee's own negligence." *Atlantic Richfield Co. v. Petroleum Personnel, Inc.,* 768 S.W.2d 724, 725 (Tex.1989). In discussing its holding in *Singleton v. Crown Central Petroleum Corp.,* 729 S.W.2d at 690, of unenforceability of an indemnity provision containing an "except" clause similar to the one at issue here, and where the indemnitee had been found to be concurrently negligent, the court observed:

> The indemnity contract in *Singleton* did not specifically state that Mundy [contractor] was obligated to indemnify Crown [owner] for Crown's own negligence. Rather, it specifically stated what was not to be indemnified, "claims resulting from the sole negligence of the owner." The agreement, therefore, was an implicit indemnity agreement requiring Mundy to deduce his full obligation from the sole negligence exception.

*Atlantic Richfield,* 768 S.W.2d at 725. Based on the supreme court's rationale, as expressed in *Ethyl,* underlying its adoption of the express negligence rule, *i.e.,* to reduce the plethora of lawsuits brought to construe *ambiguous* indemnity provisions, and the Court's clarification of that holding, as expressed in *Atlantic Richfield,* I

conclude that the express negligence test is revolutionary in that it requires the indemnitee to establish, within the four corners of the contract, the *unambiguity* of the indemnity provision, thereby placing the burden of establishing its *enforceability* on the indemnitee as a part of its prima facie case; whereas, under the "clear and unequivocal" test the burden was on the indemnitor to prove, *as a defense,* the *unenforceability* of an *ambiguous* indemnity provision by *factually* establishing the indemnitee's negligence. *See Delta Eng'g Corp.,* 668 S.W.2d at 772. The provision at issue here fails to expressly exculpate the indemnitee for its own negligence. The supreme court has held that such a provision is unenforceable as a matter of law. *Singleton,* 729 S.W.2d at 690.

Turning, then, to the provisions at issue on this appeal, we are confronted with the same type of broad language that the supreme court refused to enforce in *Ethyl* and in *Singleton,* The provisions simply do not specifically speak to indemnity for the consequences of the indemnitee's own negligence. These provisions cannot be enforced if the express negligence doctrine applies. Noting that this court is not bound to follow lower federal court decisions, *see Barstow v. State,* 742 S.W.2d 495, 501 n. 2 (Tex.App.—Austin 1987, writ denied), I conclude that *Ethyl* is the controlling authority on this issue in Texas and further conclude that the express negligence doctrine does apply here.

For the reasons earlier expressed, I disagree with the majority that *Copeland* is applicable. Even if applicable, I do not agree that *Copeland* is closely analogous on its facts to the case at bar. In *Copeland,* Shell and Copeland were both sued by the injured party. Shell tendered defense of suit to Copeland under the provisions of the indemnity contract, but Copeland, although a party, refused to defend. Shell defended at its own expense and ultimately settled the suit. Shell then sued Copeland for the settlement amount, attorney fees and other costs in defending the suit. Finding for Shell, the trial court specifically found in its findings of fact and

conclusions of law that the negligence of a Copeland employee was the sole proximate cause of Johnson's death, and further found that no agent, servant, or employee, of Shell committed any act of negligence which contributed to cause the death of Johnson. Further, the trial court found that "the supervisory personnel of Copeland knew and appreciated the danger" created by the Copeland employee's negligence, and that "[o]n several prior occasions Shell's representatives had warned Copeland's supervisors of the danger ..., who, in turn, advised [Copeland's employee] of the danger." Here, neither Lott nor Continental was found to be negligent. Indeed, Continental was not even sued by Williams. Even in *Patch v. Amoco Oil Co.*, 845 F.2d 571, 572 (5th Cir.1988) (interpreting Texas law), relied on by the majority, the court seems to intimate that if indemnitee is found to be not negligent and indemnitor *is* negligent, then indemnitee is entitled to indemnification. This is not the case here. Further, *Copeland* was cited and followed by the court in *Barnes*, 642 F.2d at 995; however, rejecting *Barnes*, the Texas Supreme Court in *Ethyl* stated, "[O]ur adoption of the express negligence test *necessarily rejects the reasoning of Barnes.*" *Ethyl*, 725 S.W.2d at 707 (emphasis supplied.) I conclude that this is so because the express negligence test is a rule of contract construction, not an affirmative defense. *See Monsanto Co. v. Owens-Corning Fiberglass Corp.*, 764 S.W.2d 293, 296 (Tex.App.—Houston [1st Dist.] 1988, no writ). Further, Continental's answer denying liability on the indemnity issue put the validity of the indemnity provision into issue, thereby requiring Lott to establish the enforceability of the provision. *See id.* I conclude, therefore, that *Copeland* is inapplicable.

Further, if the express negligence rule is to be construed as a defense, then I conclude that its adoption does nothing to reduce the plethora of lawsuits brought to construe ambiguous indemnity provisions. Implicit in the holding in *Ethyl*, as clarified in *Atlantic Richfield*, is that to be enforceable, the provision must be unambiguous. As the court in *Atlantic Richfield* observed, by negatively stating what is not to be indemnified, as opposed to affirmatively stating what is to be indemnified, the provision is an implicit indemnity agreement requiring Continental to deduce its full obligation from the sole negligence exception. *See Atlantic Richfield*, 768 S.W.2d at 725. Consequently, I conclude that if the obligation of indemnitor is to be found in the *factual* proof of an exception, then the intent of the parties is not specifically stated within the four corners of the agreement; thus, under *Ethyl* and *Atlantic Richfield*, the provision is ambiguous and, as a matter of law, unenforceable. Whether the holding in *Ethyl* is to be viewed as evolutionary or revolutionary, I conclude that it has shifted the burden to the indemnitee to show, affirmatively, that the indemnity provision is unambiguous, thus, enforceable; it is no longer the burden of the indemnitor, by *factual* proof of an exception, to show that it is unenforceable. In other words, under *Ethyl*, the enforceability of an indemnity provision is a question of law, not a question of fact.

Continental further argues that the language of paragraph 10(a) precludes an award of indemnity because it is too vague and generalized in its language and, therefore, violates the express negligence doctrine. On the other hand, Lott argues that, even if the indemnity agreement is not specific enough to confer upon it the right to be indemnified for the consequences of its own *negligence*, that is irrelevant here because it is not seeking such a recovery in this case. Indeed, Lott emphasizes that in the record before us there is an express jury finding that Lott was *not negligent*.

Indemnity is a "derivative action" and not an independent cause of action. *City of Houston v. Watson*, 376 S.W.2d 23, 33 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.). Apparently the majority conclude that it derives from the negative finding as to negligence. For reasons earlier stated, if it must so derive, then the indemnity provision cannot, as a matter of law, be enforceable. I conclude that under the express negligence test, the *enforceability* of the indemnity provision must "derive"

from the intent of the parties as expressed within the four corners of the agreement. If the indemnity provision *expressly* covers the cause of action pleaded against the indemnitee, then the provision is enforceable; if it does not, it is unenforceable as a matter of law. If enforceable, the *right* to indemnity then derives from either a loss or liability suffered by the indemnitee. Here, however, that issue is not reached.

Continental argues, and I think soundly so, that in this context, by analogy, if an insurance policy excludes coverage for defamation and the insured is sued for defamation but is successful in its defense, it cannot then claim coverage for its costs of defending the suit. I find this reasoning persuasive. In reality, a contract of indemnity is very similar to a contract of insurance. *Delta Eng'g Corp.*, 668 S.W.2d at 773.

Thus, in my view, this case presents the following issue: when the express negligence doctrine works to deny indemnification for the consequences of the indemnitee's own negligence, does it also work to bar indemnification for the expenses incurred by an indemnitee in the successful defense of a negligence action based solely on its own negligence? Logic and the prevailing binding authorities dictate that the answer to the above question is yes. In *Adams v. Spring Valley Construction Co.*, 728 S.W.2d 412, 413 (Tex.App.—Dallas 1987, writ ref'd n.r.e.), we applied the express negligence doctrine to an indemnity provision, holding that the provision was not sufficiently specific to entitle the indemnitee to indemnification for the consequence of his own negligence. Interestingly, Lott argues that in the indemnity context, unlike the insurance context, the right does not accrue until after a determination of negligence is made; however, here Lott argues that its right to indemnity accrued upon a negative determination as to negligence.

While I agree that the right to indemnity does not accrue until after a determination of either loss or liability is made, *see City of Houston*, 376 S.W.2d at 33, the determination of the enforceability of the indemni-

ty provision is not so dependent. To the contrary, the enforceability of the agreement is to be found within the four corners of the contract. *Ethyl*, 725 S.W.2d at 708. Arguing that *Adams* does not apply, Lott correctly points out that *Adams* is procedurally distinguishable because this court rendered summary judgment for the indemnitor before the liability of the indemnitee was determined. Nevertheless, I conclude that *Adams* is significant because in that instance this court looked to the *nature of the claims asserted,* determined that the claims were based solely on negligence, applied the express negligence rule and denied recovery to the indemnitee. Our holding in *Adams* was not conditioned on a finding of negligence as a matter of law, nor was it conditioned on a finding of a lack of negligence. We simply looked to the *nature of the claims asserted* rather than the ultimate determination as to negligence in reaching our decision as to the enforceability of the provision.

Similarly, in *Gulf Coast Masonry,* 739 S.W.2d at 239, the Texas Supreme Court applied the express negligence doctrine and denied recovery to an indemnitee based on the claims asserted before the indemnitee's liability had been determined. In light of the supreme court's treatment of *Gulf Coast Masonry,* I conclude that our focus is properly upon the *claims asserted.* The fact that a jury found a lack of negligence on the part of Lott does not change the enforceability of the indemnity agreement. Under Lott's theory, courts would be required to await a final liability determination in order to determine the duty to defend. Consequently, summary judgment as granted in *Adams* and *Gulf Coast Masonry* would be inappropriate.

Further, I conclude that such an interpretation of this indemnity agreement is strengthened by the inclusion of the "duty to defend" provision. In this case, as in the insurance context, only a plaintiff's pleaded allegations are considered to determine a duty to defend. *See Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973). Logically, the duty to defend cannot depend upon the truth or ultimate success of the allegations assert-

ed; otherwise, the breach would occur prior to the time the duty comes into existence. Moreover, under Lott's interpretation of this agreement, Continental, the party with a duty to defend Lott, would have a financial incentive in having Lott found negligent and, consequently, a financial disincentive to vigorously defend. I find those results untenable.

Lott asks us to follow the reasoning of the federal court in *Stephens*, 517 F.2d at 1126, and reject the financial incentive notion based on the rationale that the parties can adequately deal with these issues when initially bargaining over the terms of indemnity. I see no reason why this rationale does not work both ways. If indeed the intent of the parties is to indemnify for expenses incurred in defense of a suit only if and when a claimant is exonerated of alleged negligence, I see no reason why the parties cannot just as easily deal adequately with this issue when initially bargaining over the terms of the contract.

Lott urges for the first time on appeal that paragraph 20 of the subcontract provides a basis for the indemnity award. I can find nothing in the record before us to indicate that this issue was ever presented to the trial court. The record before us contains no findings of fact and conclusions of law. It is well settled that in a nonjury trial where findings of fact and conclusions of law are not properly requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977), *citing Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex.1968). Therefore, I would consider paragraph 20 as a basis for the indemnity award. Interpretation of the indemnity provision is a matter of law. The general rules relating to the construction of contracts are applicable to indemnity contracts. We must seek the intention of the parties from the language used in the contract. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex.1980). All of the language used is to be considered. Consideration may be given to the subject matter of the contract and the surrounding facts and circumstances, not for the purposes of varying or adding to the contract but in order to find out the intention with which words are used. *Joe Adams & Son v. McCann Constr. Co.*, 475 S.W.2d 721, 724 (Tex.1971).

In applying the above criteria, I note that in addition to the provisions previously mentioned concerning indemnity, the subcontract contains still another indemnity provision in paragraph eleven whereby Continental agrees to indemnify Lott for all loss and expense incurred by Lott resulting from claims or suits for infringement of patents or violations of patent rights by Continental. In paragraph seventeen, there is language that Continental will, at its own cost and expense, including counsel fees, defend any suit filed against it for a claim or lien for labor, services or materials used or purchased for use in the work covered by the contract.

I conclude, therefore, that reading the contract as a whole in light of the above criteria, the language contained in paragraph 20 was intended by the parties to apply to a contract cause of action and not to a negligence cause of action, and I would so hold. Consequently, paragraph 20 can provide no basis for the trial court's award of attorney fees for defense of a negligence cause of action based solely on the alleged negligence of Lott.

## SUMMARY

In summary, then, based on the above discussion, I conclude that the express negligence test applies and, failure to satisfy that test renders the indemnity provisions unenforceable as a matter of law. As to paragraph 10(a) and "Attachment A," I conclude that an interpretation of the indemnity provisions which necessarily results in a potential breach before a duty exists, as well as a conflict of interest, is untenable. I further conclude that post-*Ethyl*, when the issue of indemnity is contested, the indemnitee has the burden of satisfying the express negligence test adopted by the court in *Ethyl*, thereby establishing the enforceability of the in-

demnity provision. When the express negligence doctrine works to deny indemnification for the consequences of the indemnitee's own negligence, it likewise works to deny indemnification for expenses incurred by an indemnitee in the defense of a negligence action based on the indemnitee's own alleged negligence. Specifically, I would hold that the enforceability of the indemnity provision is a question of law determined by the specific intent of the parties as expressed within the four corners of the agreement. Further, I would hold that in interpreting an indemnity agreement containing a "duty to defend" provision, the duty to defend is determined by looking to the *nature of the claims asserted*, not to the ultimate determination of negligence.

Further, I conclude that paragraph 20 applies only to an action based in contract and does not apply to this action based solely on Lott's alleged negligence; and I would so hold. Consequently, I would reverse the judgment of the trial court insofar as it awards indemnity in favor of Lott; I would render judgment that Lott take nothing on its indemnity claim for expenses incurred in successfully defending a suit based solely on allegations of Lott's own negligence. In all other respects, I would affirm the judgment of the trial court.