Leroy SULLEN, Plaintiff,

v.

MISSOURI PACIFIC RAILROAD COMPANY, Defendant.

Leroy SULLEN, Plaintiff-Appellant,

v.

CHEVRON CHEMICAL COMPANY, Defendant-Appellee-Appellant,

v.

BROADMOOR CORPORATION, et al., Third Party Defendants-Appellees.

No. 83–3372.

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1985.

---

Heisler & Wysocki, Bonnie L. Zakotnik, New Orleans, La., for Sullen.

McLoughlin, Barranger, Provosty & Melancon, Lloyd C. Melancon, New Orleans, La., for Chevron.

Bienvenu, Foster, Ryan & O'Bannon, H.L. Foster, III, New Orleans, La., for Broadmoor, et al.

Before GEE, POLITZ and RANDALL, Circuit Judges.

POLITZ, Circuit Judge:

This diversity case occasions an examination and application of the statutory-employer provision of the Louisiana Worker's Compensation Law, La.R.S. 23:1061, as well as application of the Louisiana law governing indemnity between certain contracting parties. Leroy Sullen appeals the grant of summary judgment dismissing his personal injury claim on a finding that Chevron Chemical Company was his statutory employer at the time of the injury-producing accident.[1] Chevron appeals the dis-

---

**1.** Sullen also appealed from the judgment dis-

missing his complaint against Missouri Pacific

missal of its indemnification claim against Broadmoor Corporation, Sullen's employer. Finding neither error of fact or law in the district court's opinion, we affirm.

### Facts

Sullen was an employee of Broadmoor. Broadmoor contracted with Chevron to provide the laborers to clean tank cars prior to their being loaded with products at Chevron's Oak Point plant. The tank cars were cleaned daily. The Broadmoor crew was under the supervision and immediate direction of a Broadmoor foreman who had hiring and firing authority. The Broadmoor foreman, in turn, took his orders from a Chevron employee.

During the period of the Broadmoor/Chevron contract, Chevron employees occasionally performed car cleaning tasks when Broadmoor employees were not available, but Broadmoor and Chevron employees did not work together. Before Chevron's contract with Broadmoor, Chevron employees regularly and routinely cleaned tank cars. By the time this case was being readied for trial, because of an economic downturn Chevron had resumed tank car cleaning with in-house personnel. The contractual arrangement with Broadmoor was discontinued.

Under the contract, Broadmoor agreed to indemnify and hold Chevron harmless from any claim made by any Broadmoor employee. Broadmoor did not specifically agree to indemnify Chevron for claims based on Chevron's own negligence.

The district court found that the cleaning of tank cars before loading products for shipment was an integral part of Chevron's trade or business which had been performed customarily by Chevron employees. Accordingly, Sullen was found to be a statutory employee under La.R.S. 23:1061.[2] As a result of that designation, under La. R.S. 23:1032,[3] Sullen's exclusive remedy was under the Worker's Compensation Law and his tort action against Chevron was statutorily barred. As a consequence of the grant of Chevron's motion for summary judgment dismissing Sullen's claim, the district court considered moot Broadmoor's motion for summary judgment seeking dismissal of Chevron's claim for contractual indemnity. The court noted that if the motion had not been moot, it would have been granted. Chevron maintains that despite the mootness, it is entitled to attorney fees and costs incurred in the successful defense against Sullen's *ex delicto* claim because the contract required Broadmoor to defend any suit brought by a Broadmoor employee.

### Analysis

A. *Statutory Employer*

After a period of some difficulty, including "conflicting interpretation," *Penton v.*

Railroad Company. That appeal was dismissed previously by order of this court and is not now before us.

**2.** The statutory-employer section, La.R.S. 23:1061, provides:

Where any person (in this section referred to as principal) undertakes to execute any work, which is a *part of his trade, business, or occupation* or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him.... [Emphasis added.]

**3.** La.R.S. 23:1032 provides in pertinent part:

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

*Crown Zellerbach Corp.*, 699 F.2d 737, 740 (5th Cir.1983), beginning with *Blanchard v. Engine & Gas Compressors Services, Inc.*, 613 F.2d 65 (5th Cir.1980), we have sought to minimize conflicts and accord a uniform application to R.S. 23:1061. In *Blanchard* we observed:

[W]e should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal. If either of these situations exist, then there is a statutory employment relationship, and the inquiry ends there. If, however, the principal does not normally engage in this type of activity, or if it is not normally a part of his practices, then it is necessary to determine if others engaged in businesses similar to that of the principal customarily do this type of work or if it is an integral part of their businesses. If either of these inquiries yields an affirmative answer, then the general custom of the trade will control to make the relationship between the principal in question and his contractors' employees that of statutory employer and employee.

613 F.2d 65, 71 (5th Cir.1982). In a *Blanchard* progeny, *Chavers v. Exxon Corp.*, 716 F.2d 315, 317 (5th Cir.1983), we quoted from and explained *Blanchard's* holding:

By way of further explanation we stated that the court "should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor." If that answer is in the affirmative, the principal is a statutory employer with resulting workmen's compensation obligations and a concomitant liability shield. If the answer is negative, the court must continue the inquiry "to determine if others engaged in businesses similar to that of the principal customarily do this type of work or if it is an integral part of their businesses." If this query results in an affirmative response the principal is a statutory employer. In sum, the core

inquiry is whether the employees of the principal or employees of other employers engaged in similar operations customarily perform the work at issue. In either instance, the principal will be deemed a statutory employer.

The Louisiana Supreme Court addressed the matter recently in *Lewis v. Exxon Corp.*, 441 So.2d 192 (La.1983), phrasing the test as follows:

Two elements of the § 1032 definition must be met in order for a principal to be considered a statutory employer. First, the "work" must be a part of the principal's "trade, business or occupation." Second, the principal must have been engaged in that trade, business or occupation at the time of the injury. Absent either of these two conditions, the injury will not come within the scope of the workers' compensation program.

Courts must look to the facts of each individual case to determine whether a particular activity is within the scope of a principal's trade, business or occupation. Generally, in order for a work or project to be within a principal's trade, business or occupation, it must be routine or customary, or some other type of activity which is necessary for the principal's day-to-day operations. Put another way, the works contemplated by the statute are those activities which are an actual part of the nature and purpose of the principal's enterprise. Extraordinary or nonrecurring constructions or repairs usually are outside the scope of the trade or business of manufacturing or production concerns.... General maintenance and repair work, which by their nature allow the smooth and continued operations of the principal, are within the scope of the statute.... The specific task to which an individual employee is put should not be determinative of his coverage under the act. Instead, the entire scope of the work contract must be considered.

441 So.2d 197–98 (citations omitted). After *Lewis* we again considered the issue in *Hodges v. Exxon Corp.*, 727 F.2d 450 (5th

Cir.1984), and concluded that although the language of *Lewis* differed from that in *Blanchard*, the analysis of the legal issue was the same under both articulations.

■ Applying Louisiana law as announced by the Louisiana Supreme Court and as perceived by panels of this court in a growing line of cases, it is abundantly clear that summary judgment was appropriate in the present instance. *Blanchard* set out a disjunctive test under which a principal is a statutory employer if either the principal or others engaged in the same business customarily perform the work performed by the contractor *or* the work performed by the contractor is an integral part of work customarily performed by the principal or others engaged in the same business. While the affidavits and depositions in this case may be considered arguably insufficient to support a summary judgment on the ground that Chevron or others engaged in the business of blending oil additives customarily clean railroad tank cars, the record fully supports the trial judge's finding that the cleaning of tank cars is an integral part of Chevron's operations. The tank cars came into the plant daily and had to be cleaned before being loaded with Chevron products. Before Chevron contracted with Broadmoor, Chevron employees regularly did this cleaning along with other cleaning and general maintenance. During a period of business prosperity Chevron promoted all of its laborers to operators and contracted with Broadmoor for a pool of laborers to perform general maintenance and cleaning duties. When the economic conditions required belt tightening, Chevron returned to the use of its own employees for maintenance and cleaning. And as the *Lewis* court noted, maintenance work is an integral part of a principal's trade, business or occupation and is within the reach of § 1061. *See also Barrios v. Engine & Gas Compressor Services, Inc.*, 669 F.2d 350 (5th Cir.1982).

## B. *Indemnification*

The contract between Chevron and Broadmoor provides:

> 3.2  CONTRACTOR [Broadmoor] agrees to defend and hold COMPANY [Chevron], its assigns, directors, employees, insurers, officers, stockholders and successors indemnified and harmless from and against any loss, expense, claim or demand for:
>
> 3.2.1  Injury to or death of CONTRACTOR'S employees or for damage to or loss of CONTRACTOR'S property in any way arising out of or connected with the performance by CONTRACTOR of services hereunder; and
>
> 3.2.2  Injury to, or death of, third persons or the employees of COMPANY, or for damage to or loss of property of COMPANY or of third persons, in any way arising out of or connected with the performance by CONTRACTOR of services hereunder. CONTRACTOR shall be liable for Property Damage to a maximum extent of $100,000.00.

Chevron has previously urged that contracts with identical or essentially similar wording entitled it to indemnity for costs and legal fees even when the claim was based solely on allegations of Chevron's negligence. Our response has been ambivalent. In *Stephens v. Chevron Oil Co.*, 517 F.2d 1123 (5th Cir.1975), although recognizing that "the terms of this indemnity agreement do not entitle Chevron to be indemnified against its own negligence," id. at 1125, we nonetheless allowed recovery of fees and costs because the jury found Chevron free of negligence. In a companion suit decided that same day, *Smith v. Chevron Oil Co.*, 517 F.2d 1154 (5th Cir. 1975), Chevron was found negligent. Chevron's claim for reimbursement of costs and fees was expressly rejected because we found "no contract language to indicate an intent for [the indemnitor] to provide a legal defense for Chevron against its negligent acts." *Id.* at 1158. In the recent case of *Wiley v. Offshore Painting Contractors*, 711 F.2d 602 (5th Cir.1983), we rejected Chevron's claim for indemnity, citing *Smith* and *Stephens* "where we held un-

equivocally that this indemnity provision 'does not provide for indemnification for [Chevron's] own negligence in the clear and specific language required by Louisiana law.'" *Id.* at 610.

In a recent case, *Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614 (5th Cir.1983), we suggested that Louisiana law does not require a specific reference to negligent acts in order for an indemnity agreement to cover claims based on negligence if the language of the agreement reflects a clear intent to include those acts. However, *Wiley* holds that the wording in Chevron's contract, which we now review, does not show a clear intent of the parties to indemnify Chevron when the action is based on Chevron's sole negligence.

Nevertheless, Chevron argues that it is entitled to reimbursement for the cost of successfully defending an action based solely on its alleged negligence, *citing Stephens* and *Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238 (5th Cir.1980). We are not persuaded. In allowing fees and costs the *Stephens* court overlooked controlling Louisiana precedent and the *Hobbs* court uncritically followed *Stephens*, overlooking intervening Louisiana decisions. The issue was not squarely presented to the court in *Stephens* or *Hobbs*. We do not labor under that limitation and we take cognizance of post-*Stephens* decisions of the Louisiana courts which reach a contrary result.

Louisiana law is definite and certain. Whether a party is obliged to tender a defense to another party depends entirely upon the allegations in the precipitating pleadings. *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969); *Young Oil Co. of Louisiana, Inc. v. Durbin*, 412 So.2d 620 (La.App. 1982); *Sullivan v. Hooker Chemical Co.*, 370 So.2d 672 (La.App.1979); *Pearson v. Hartford Accident & Indemnity Co.*, 345 So.2d 123 (La.App.1977). In determining whether an indemnitor or an insurer is obligated to defend an indemnitee or insured under the terms of an indemnity or insurance contract, the Louisiana courts look exclusively to the pleadings in light of the contract provisions; the ultimate outcome of the case has no effect upon the duty to defend. *Young Oil Co. of Louisiana, Inc. v. Durbin; West Brothers of DeRidder, La., Inc. v. Morgan Roofing Co., Inc.*, 376 So.2d 345 (La.App.1979); *Sullivan v. Hooker Chemical Co.* In seeking cost and fee reimbursement Chevron is arguing its entitlement to a defense.

In *Sullivan v. Hooker Chemical* the plaintiff, an employee of Atlas Erection Co., was injured while working on Hooker Chemical's premises. The petition was based solely on allegations of Hooker's negligence and the negligence of a third party. Hooker conceded that its indemnity agreement with Atlas did not require Atlas to indemnify losses caused by its own negligence but argued that Atlas should have provided a defense. The trial court found that neither Hooker nor the third party was negligent and denied recovery of costs and fees. In analyzing Atlas' obligation to defend Hooker, Judge Lemmon (now Justice Lemmon of the Louisiana Supreme Court) stated and held:

> Plaintiff's petition alleged Hooker was liable on the basis of its independent negligence and of its negligence or responsibility in relation to Giambelluca's contractual operations. There was no allegation of liability asserted against Hooker in relation to Atlas' contractual operations. Thus, unless the pleadings were expanded, Hooker could only have been found liable on the basis of its own negligence or that of Giambelluca.

> *   *   *   *   *   *

> The contract terms provided for indemnity for Hooker's liability for Atlas' negligence, but not for Hooker's own negligence or for Hooker's liability for negligence of a third party. Under these circumstances neither indemnity nor defense was owed by Atlas.

370 So.2d at 677.

From the foregoing we conclude that unless the contract of indemnity specifically provides for costs of defense as a separate item of indemnification, the in-

demnitor has no obligation to defend if the petition alleges facts which, if proven, would establish liability of the indemnitee but preclude coverage under the indemnity agreement.

In analyzing Broadmoor's obligation to defend Chevron we are *Erie*-obliged to follow and apply Louisiana law. Doing so we focus exclusively on the pleadings considered against the backdrop of the indemnity agreement. Sullen's complaint was based solely on allegations of Chevron's negligence. As we have previously held, the language of this indemnity agreement does not obligate Broadmoor to indemnify Chevron for Chevron's own negligence (*Stephens, Smith* and *Wiley*), and there is no language indicating the intent of Broadmoor to provide Chevron with the costs of defense against its own negligent acts (*Smith*). Since the pleadings alleged only Chevron's negligence, Broadmoor had no duty to defend and is not obliged to reimburse Chevron the costs it incurred in its defense.

The judgment of the district court is AFFIRMED.