**CONSTRUCTION INVESTMENTS AND CONSULTANTS, INC., Appellant,**

v.

**DRESSER INDUSTRIES, INC., Appellee.**

**No. 01–88–00335–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1989.

Rehearing Denied Sept. 14, 1989.

Ben Taylor, Ronald J. Palmer, Fulbright & Jaworski, Houston, for appellant.

Kent C. Sullivan, Davis & McFall, P.C., Houston, for appellee.

OPINION

COHEN, Justice.

Construction Investments and Consultants, Inc. ("CIC"), the contractor, appeals from a judgment ordering it to indemnify Dresser Industries, Inc., the owner, for attorneys' fees. The issue is whether an indemnity contract, which does not meet the express negligence test, can obligate CIC to pay Dresser's attorneys' fees for successfully defending a negligence claim by an employee of CIC's subcontractor.

Smith sued Dresser and CIC for injuries he suffered while working for a CIC subcontractor on a construction job for Dresser. CIC was the general contractor. Smith was employed by T & S Masonry, CIC's subcontractor. He sued Dresser for negligence after he was struck by a falling wall.

CIC settled with Smith before trial. Smith's suit went to trial against Dresser, and the jury did not find Dresser negligent.

Dresser then sued CIC for attorneys' fees and expenses, based on the following provision in its contract with CIC:

> Contractor [CIC] shall, except as otherwise expressly provided herein, indemnify, protect and save Dresser, its directors, officers and employees harmless against any and all actions or causes of action, claims, demands, liabilities, loss, damage, injury, cost or expense of whatever kind or nature, including *costs of litigation, attorney fees and reasonable expenses in connection therewith*, brought or presented by any person, firm, or corporation whatsoever, (including but not limited to, third parties, employees of Dresser, employees of Contractor or of any subcontractor, and their dependents and personal representatives) for injuries to or the death of any person, or damage to or loss of property alleged or claimed to have been caused by, or to have arisen out of or in connection with, or to be incidental to any of the work ... *whether or not such loss, injury, or damage shall be valid or groundless,* and Contractor agrees that in case Dresser ... shall be made defendant in *any* suit, action or proceeding wherein it is sought to recover from Dresser ... damages on account of any personal injuries or property loss or damage, *Contractor,* immediately upon notice from Dresser, *shall be bound and obligated to assume the defense thereof, including the settlement negotiations, and shall pay,* liquidate, discharge and satisfy any and all settlements, judgments, awards or *expenses* resulting from or arising out of such injuries, death or damages without reimbursement from Dresser. *It is understood and agreed by Contractor that in case Dresser is made defendant in any suit or action and Contractor fails or neglects to assume the defense thereof, after having been notified so to do by Dresser, that Dresser may compromise and settle or defend any such suit or action, and Contractor shall be bound and obligated to reimburse Dresser for the amount expended by it in settling and compromising any such claim, or in the amount expended by Dresser in paying any judgment rendered therein, together with all reasonable attorneys' fees incurred by Dresser by reason of its defense or settlement of such claims.*

(Emphasis added.)

The trial court awarded judgment for Dresser of $142,633.20 for attorneys' fees and expenses and CIC has appealed.

CIC asserts, in its sole point of error, that the trial court erred in awarding Dresser its defense costs because the indemnity agreement fails to meet the "express negligence test."

In *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705 (Tex.1987), the court adopted the "express negligence test" for determining the validity of indemnity agreements and held that agreements to indemnify a party for its own negligence are unenforceable unless that intent is expressly stated: "[t]he express negligence doctrine provides that parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms." 725 S.W.2d at 708; *accord Atlantic Richfield Co. v. Petroleum Personnel, Inc.,* 768 S.W.2d 724, 725 (1989). Here Dresser does not seek indemnification for its negligence. The jury did not find Dresser negligent. Rather, Dresser seeks reimbursement for its attorneys' fees and costs, as expressly provided in the contract with CIC.

We agree with CIC that this indemnity provision does not meet the express negligence test because it does not expressly state that CIC shall indemnify Dresser regardless of cause or of any fault or negligence of Dresser's. *Adams Resources Ex-*

*ploration Corp. v. Resource Drilling, Inc.*, 761 S.W.2d 63 (Tex.App.—Houston [14th Dist.] 1988, no writ); *B–F–W Constr. Co. v. Garza*, 748 S.W.2d 611, 614 (Tex. App.—Fort Worth 1988, no writ). Thus, CIC would not have been required to reimburse Dresser for negligence damages awarded to Smith, *if* the jury had found Dresser liable. Nevertheless, under the trial court's ruling, CIC would still owe indemnity for defense costs. The question, then, is whether CIC's obligation to indemnify Dresser for its defense costs is separate from its obligation to indemnify Dresser for its own negligence. We hold that it is.

In *Copeland Well Serv., Inc. v. Shell Oil Co.*, 528 S.W.2d 317 (Tex.App.—Tyler 1975, writ dism'd), Shell sued Copeland for contractual indemnity. One of Copeland's employees had been killed while performing the contract, and his representatives had sued Shell. Copeland refused to defend Shell, and Shell sued Copeland for indemnification. Copeland claimed the indemnity provision did not clearly require it to indemnify Shell for Shell's own negligence. *Id.* at 318–19. The trial court, however, granted indemnity in favor of Shell, and the appeals court affirmed.

Discussing whether the contract expressly required Copeland to indemnify Shell from its own negligence, the court noted:

> Obviously, the [express negligence test] constitutes a defense only in those situations where it has been established that the indemnittee's negligence caused the casualty made the basis of the indemnitte's suit on the contract. Thus, in order to determine whether Copeland may avail itself of the defense in the present suit, it becomes necessary to first determine whether Shell was guilty of any negligent act ...

*Id.* at 320. The court noted that Shell had not been found negligent, and held:

> Having failed to ... establish that Shell was negligent, [Copeland] is in no position to contend that the indemnity agreement is unenforceable on the grounds that the same did not unequivocally state that the indemnitee [Shell] was to be

protected from its own negligence. In the absence of a finding of negligence on the part of Shell, the validity of the indemnity agreement never came into play. Consequently, we do not reach the question of whether the indemnity agreement was sufficient to protect Shell against its own negligence. *Id.*

As a result, Shell received indemnification for attorneys' fees and costs. *See id.* at 319.

In *M.M. Sundt Const. Co. v. Contractors Equip. Co.*, 656 S.W.2d 643 (Tex.App. —El Paso 1983, no writ), both parties paid to settle personal injury claims, and Contractors then sued Sundt for contractual indemnity for its costs of defense. The trial court granted indemnity in favor of Contractors, and Sundt appealed.

Sundt contended the indemnity provision did not meet the then applicable variant of the express negligence test. The court noted that Contractors had not been found negligent, concluded it was irrelevant that the contract might not validly indemnify Contractors for its own negligence, and affirmed the award of indemnity for defense costs. *Id.* at 645.

The Dallas Court of Appeals recently followed *Copeland* and *Sundt*, and reached the same result in *Continental Steel Co. v. H.A. Lott, Inc.*, 772 S.W.2d 513 (Tex.App.—Dallas, 1989, n.w.h.); *see also Delta Drilling v. Cruz*, 707 S.W.2d 660, 668–69 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

Two federal courts applying Texas law have held that an indemnitee may recover costs where it was not found negligent, even though the contract did not meet the express negligence standard. *Patch v. Amoco Oil Co.*, 845 F.2d 571 (5th Cir.1988) (opinion by Judge Reavley); *Leonard v. Aluminum Co. of America*, 767 F.2d 134, 137 (5th Cir.1985), *vacated on rehearing*, 800 F.2d 523 (5th Cir.1986); *see also Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238, 1241 (5th Cir.1980) (Louisiana law); *Stephens v. Chevron Oil Co.*, 517 F.2d 1123 (5th Cir.1975) (Louisiana law). The *Stephens* court allowed indemnity for costs of a successful defense, even though

the indemnitee conceded the contract did not meet the express negligence test. 517 F.2d at 1123. Although CIC relies heavily on this case, *Hobbs* allowed indemnity for defense costs under a provision too general to meet the express negligence test. Indeed, the contract in *Hobbs*, unlike the one before us, did not require indemnity for the cost of defending "(in)valid or groundless" claims. The result in *Hobbs* is, therefore, consistent with the present judgment, and the requirement that CIC indemnify Dresser for even groundless and invalid claims makes this case a stronger one than *Hobbs* for enforcing the indemnity clause.

We are aware of *Sullen v. Missouri Pac. R.R. Co.*, 750 F.2d 428 (5th Cir.1985) (Louisiana law), where Judge Politz criticized his own opinion in *Hobbs* and the opinion in *Stephens*. He wrote:

> We conclude that unless the contract of indemnity specifically provides for costs of defense *as a separate item of indemnification*, the indemnitor has no obligation to defend if the petition alleges facts which, if proven, would establish liability of the indemnitee but preclude coverage under the indemnity agreement.

750 F.2d 433–34 (emphasis added).

The *Sullen* opinion does not convince us that *Hobbs* and *Stephens* were wrongly decided. Moreover, the provision here regarding defense costs is so specific, lengthy, and repeated that even the *Sullen* court might characterize it a "separate item of indemnification."

Finally, CIC relies heavily on *Monsanto Co. v. Owens–Corning Fiberglas Corp.*, 764 S.W.2d 293 (Tex.App.—Houston [1st Dist.] 1988, no writ), where this Court denied indemnity for defense costs because "the intent ... to indemnify Monsanto for attorney's fees is not specifically stated within the contract." The relevant part of the indemnity provision in *Monsanto* was approximately 12 words in length. *Id.* at 295. It does not compare with the specific, lengthy indemnity clause in the present case.[1]

There is an additional reason why a contract's failure to meet the express negligence test should not automatically preclude indemnity for costs of defense. The purpose of the express negligence test is to avoid surprise to the indemnitor by forcing parties to avoid deliberately vague language that a court might later be found to impose crushing liability. *Ethyl*, 725 S.W.2d at 707–08. No such surprising, unbargained for result would occur here by allowing indemnity for Dresser's defense costs. This contract cannot be read without the immediate recognition that CIC is bound to pay Dresser's costs of defense. Indeed, a surprising result here would occur if we refused to enforce clear language obligating CIC to pay for Dresser's defense costs. Enforcing this particular indemnity clause seems especially appropriate because the duties are stated so clearly, the risk being shifted is less than the risk of negligence liability (which is unlimited), and the costs of defense, unlike tort damages, are subject to numerous controls by the indemnitor, both before and after the alleged tort occurs.

Based on these authorities and reasons, we hold that the better rule is to allow indemnity for costs of defense in this case, even though the express negligence test of indemnity for the underlying tort has not been met.

Appellant's point of error is overruled.

The judgment is affirmed.

BASS and MIRABAL, JJ., also sitting.

MIRABAL, J., concurring.

BASS, J., dissenting.

MIRABAL, Justice, concurring.

The concurring opinion issued in this case on August 31, 1989 is ordered withdrawn, and the following concurring opinion is hereby substituted.

I concur in the result reached in the majority opinion, but I disagree with a por-

---

1. Moreover, the indemnity clause quoted in *Monsanto* indemnified Monsanto from Owens–

Corning's negligence, not against its own negligence.

tion of the opinion. I agree that the trial court properly awarded Dresser judgment against CIC for attorneys' fees *because* the jury did not find Dresser negligent. This conclusion is in accord with the many cases cited by the majority that reason that, when an indemnitee has not been found negligent and sues for indemnity for its costs of defense, it is irrelevant that a contract might not validly indemnify the indemnitee for its own negligence under the express negligence test—the validity of the indemnity agreement never comes into play.

It is not necessary, under the facts of this case, to go any further. I do not join in that part of the majority's opinion that states that even if the jury had found Dresser negligent, CIC would still be liable to pay Dresser's attorneys' fees and other defense costs.

SAM BASS, Justice, dissenting.

I respectfully dissent. This appeal concerns the construction of an indemnity contract between appellant, Construction Investments and Consultants, Inc. ("CIC"), the contractor, and appellee Dresser, the owner. The question before this Court is whether the "express negligence test" applies to the entire indemnity provision, or whether CIC's obligation to indemnify Dresser for attorneys' fees and expenses is separate from its obligation to indemnify Dresser for its own negligence.

Dresser argues, and the majority agrees, that the duty to defend and the obligation to indemnify pursuant to the indemnity provision in the contract between Dresser and CIC are separate and distinct issues. Appellant asserts that the trial court erred in awarding Dresser indemnity for attorneys' fees and expenses incurred in defending the suit, because the indemnity agreement fails to meet the "express negligence test." I agree. The express negligence test is a rule of contract construction, not an affirmative defense. *Monsanto Co. v. Owens-Corning Fiberglas Corp.*, 764 S.W.2d 293, 296 (Tex.App.—Houston [1st Dist.] 1988, no writ). The enforceability of the agreement is a question of law deter-

mined by the specific intent of the parties as expressed within the four corners of the contract. *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.1987); *Continental Steel Co. v. H.A. Lott, Inc.*, 772 S.W.2d 513 (Tex.App.—Dallas, 1989, n.w.h.) (Lagarde, J., dissenting).

A recent case from this Court holds that the "express negligence test" applies to the entire indemnity provision and not only that portion purporting to indemnify the owner for its own negligence. *See Monsanto Co. v. Owens-Corning Fiberglas Corp.*, 764 S.W.2d 293. Such a holding seems more consistent than that of the majority, which requires the contractor to pay the owner's attorneys' fees and defense costs even though a jury has found the owner liable in the underlying suit for negligence. In *Monsanto*, this Court upheld a summary judgment holding unenforceable the indemnity provisions of a contract between a company and a subcontractor because it failed to meet the "express negligence test." Monsanto argued that the summary judgment was improper because the indemnity language expressly required Owens to indemnify Monsanto for its defense costs in the event that a jury found that Monsanto was not negligent. This Court found the subsection of the indemnity provision regarding reimbursement for attorneys' fees failed the express negligence test because the intent of Owens-Corning to indemnify Monsanto for attorneys' fees was not specifically stated within the contract. *Monsanto*, 764 S.W.2d at 296.

The applicable indemnity provision of the contract in question between Monsanto and Owens-Corning reads in pertinent part:

Contractor agrees to indemnify and save Monsanto and its employees harmless against any and all liabilities, penalties, demands, claims, causes of action, suits, losses, damages, costs and expenses (including costs of defense, settlement and reasonable attorneys' fees) which any or all of them may hereafter suffer, incur, be responsible for or pay out ... as a result of bodily injuries ... to any person or damage ... to any property occurring

to or caused in whole or in part by, Contractor (or any of his employees), any of his Subcontractors (or any employee thereof), or any person, firm or corporation (or any employee thereof), or any person, firm or corporation (or any employee thereof) directly or indirectly employed or engaged by either Contractor or any of his Subcontractors.

*Monsanto,* 764 S.W.2d at 295.

Following *Monsanto,* we look to the section of the indemnity provision purporting to allow reimbursement for attorneys' fees and determine whether the intent to do so is specifically stated such that there can be no mistake about what the parties intended. To be enforceable, three elements must exist: (1) the intent of the parties must be clear; (2) it must be set forth within the four corners of the agreement; and (3) the specific intent of the parties must be expressed. *Adams Resources,* 761 S.W.2d at 65. Here, the intent of the parties is unclear. It is not expressed in the agreement whether CIC will reimburse Dresser for its attorneys' fees and costs only if Dresser is found "not negligent." Moreover, if Dresser had been found negligent in the underlying suit, the "express negligence test" as set forth in *Ethyl* would come into play, and the trial court would have had to deny not only the damages assessed for Dresser's negligence, but also the attorneys' fees as "provided for" in the indemnity agreement. The agreement did not intend to "take out of context" those portions of the indemnity provision that pertain solely to attorneys' fees and costs. The effect of Dresser's interpretation of the contract would circumvent *Ethyl* and create an unresolvable dilemma for parties faced with demands for indemnity.

Indemnity agreements are not favored in Texas and should be strictly construed. I am constrained to follow the rule in *Monsanto,* and the well-reasoned dissenting opinion by Justice Lagarde in *Continental Steel.* The test set out in *Ethyl* should be the foremost requirement in determining whether the agreement, on the whole, will be enforceable; regardless of whether negligence is eventually established on the party seeking indemnity.

Appellant's point of error should be sustained. This Court should reverse the award of indemnity and render that appellee, Dresser Industries, Inc., take nothing.