A92A0261. MYERS et al. v. TEXACO REFINING & MARKETING, INC.
(422 SE2d 216)

BIRDSONG, Presiding Judge.

Vivian Buffington sustained personal injuries when she slipped and fell as a customer at a Texaco service station and food mart. She

filed suit against the owner of the premises, Texaco Refining & Marketing, Inc. (Texaco), the operator of the facility, Myers, individually and d/b/a Jiffy Mart (Myers), and others. Texaco cross-claimed against Myers, claiming that pursuant to their contract for operation of the business, Myers agreed and covenanted to fully defend and indemnify Texaco for such claims. Texaco's cross-claim also alleged Myers' breach of contract for failure to provide liability insurance coverage for Texaco.

Texaco's cross-claims against Myers were severed from the trial of Buffington's personal injury claims. The jury returned a verdict for Buffington, apportioned against Myers et al. for $43,650 plus interest and costs, and against Texaco for $162,475 plus interest and costs. Texaco's cross-claims against Myers for indemnification and breach of the liability insurance provision were then heard. The provisions at issue are Paragraphs 9 and 10 of the parties' contract.

Paragraph 9 provides in pertinent part: *"INDEMNITY*— Contractor [Myers] covenants and agrees to fully defend, protect, indemnify and hold harmless Texaco . . . against *each and every claim*, demand or cause of action and any liability, cost, expense (including . . . reasonable attorney fees and expenses), damage or loss in connection therewith, which may be made or asserted by . . . any third parties . . . on account of personal injury or death or property damage caused by, arising out of, or in any way incidental to, or in connection with the performance of the services hereunder, *except such as may be determined . . . to have resulted from Texaco's sole negligence.*" (Emphasis supplied.)

Paragraph 10 in pertinent part provides: *"INSURANCE*—The Contractor [Myers] shall maintain, at his sole cost . . . the insurance coverage set forth below. . . . A certificate evidencing the required insurance and specifically quoting the indemnification provision set forth in the Agreement shall be delivered to Texaco. . . . C. *Comprehensive General Liability Insurance* . . . [in stated amounts]. This policy shall cover, among other risks, the contractual liability assumed under the indemnification provision set forth in this Agreement. . . . E. *Excess Liability Insurance*—Excess liability insurance over comprehensive general liability coverage . . . with minimum limits of $1,000,000.00. All such insurance policies shall be endorsed to show Texaco as an additional insured."

Both Texaco and Myers filed motions for summary judgment. The trial court granted Texaco's motion for summary judgment with regard to indemnity and denied Myers' motion for summary judgment. The trial court deliberately refrained from ruling on Texaco's claim for Myers' breach of the liability insurance procurement provision.

The trial court determined that pursuant to the contract, Texas

law governs; that in construing indemnity agreements Texas has adopted the "express negligence doctrine" according to which the intent to indemnify must be stated within the four corners of the contract; that the indemnity language in Paragraph 9, standing alone, failed to satisfy the Texas "express negligence doctrine"; but that the indemnity provisions of Paragraph 9 together with the insurance requirements of Paragraph 10 satisfied the doctrine inasmuch as Myers' intent to indemnify Texaco against personal injury losses and attorney fees and expenses was expressed within the four corners of the contract and in compliance with Texas law.

The trial court ordered Myers to pay Texaco for the $162,475 personal injury judgment against Texaco, $32,900.50 in attorney fees and $5,325.53 in costs, plus interest.

Myers contends that under the "express negligence doctrine" the indemnity provision is unenforceable because it does not expressly provide that Myers indemnifies Texaco against claims arising out of Texaco's own negligence; and that the indemnity provision and the insurance provision construed together do not impose such a duty on Myers; so, Myers contends he is not liable to indemnify Texaco against this claim arising out of Myers' and Texaco's joint negligence. *Held*:

1. Rather than rule on the complicated indemnification issue under Texas law and leave the breach of contract issue undetermined, the trial court should have ruled on the issue of breach of contract for Myers' failure to provide liability insurance with Texaco as named insured. The ruling that Myers was required to defend and indemnify Texaco against this claim does not relieve Myers of the separate contract obligation to provide liability insurance, particularly insofar as peculiar damages may arise from this breach of contract. Although Texaco did not cross-appeal on this issue, we decline to give the impression that the issue is dead, since that might give room for more litigation. See OCGA § 5-6-34 (d).

Paragraph 10 provides that Myers "shall maintain, at his sole cost . . . comprehensive general liability insurance [and] excess liability insurance [in specified amounts]." The paragraph then provides: "*All such insurance policies shall be endorsed to show Texaco as an additional insured.*" (Emphasis supplied.) It is undisputed that Myers did not procure such insurance. Rather, Myers asserts that Texaco by its conduct waived compliance with this provision. A conclusion is demanded that regardless whether Myers was required to indemnify Texaco, Myers was required to procure liability insurance for Texaco. If the indemnity provision were unenforceable for any reason, the requirement that Myers procure liability insurance for Texaco becomes everything. Texaco is not required to have raised the breach of contract issue on appeal or else lose it, because it is still pending below.

See OCGA § 9-11-54 (b). The grant of summary judgment to Texaco on the indemnity issue does not relieve Myers of the obligation to answer for its failure to provide liability insurance. As to Myers' defense of waiver, in Georgia law a waiver is not favored and must be voluntary, knowing, and unequivocal. See EGL 28A Waiver & Abandonment, § 3 et seq. (1985 ed.). An evidentiary hearing may be required as to special damages, with consideration being given (under appropriate pleadings) to Myers' failure to provide liability insurance in light of its assertion that the indemnity provision is unenforceable, which altogether leaves Texaco with no protection at all contrary to the plain and indisputable terms of the contract, and which gave rise to this litigation.

2. The trial court correctly granted summary judgment to Texaco on the indemnity issue, though not for the reasons stated. The indemnity provision contains within its own terms the intent for Myers to indemnify Texaco for this claim arising out of Myers' and Texaco's joint negligence, and it is not necessary to construe this provision with the insurance procurement provision in order to find such intent.

The parties' express intent that the "Agreement shall be construed in accordance with the Laws of the State of Texas" will be honored unless application of Texas law contravenes Georgia public policy or is prejudicial to Georgia's interests. See *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676 (2) (238 SE2d 368) and *New England Mtg. Security Co. v. McLaughlin*, 87 Ga. 1 (13 SE 81). Myers contends the "express negligence doctrine" adopted by the Texas Supreme Court provides that when parties to a contract seek indemnification of the indemnitee from the consequences of its own negligence, such an intention must be "specifically stated within the four corners of the contract." *Ethyl Corp. v. Daniel Constr. Co.*, 725 SW2d 705, 708 (2). According to Myers, such a view is consistent with Georgia public policy which "is reluctant to cast the burden of negligent actions upon those who are not actually at fault. Thus '(i)t is well established in Georgia that contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered. (Cits.)' [Cits.] ' "The words of the contract will be scrutinized closely to discover whether such an intent is actually revealed in them and every presumption is against such intention. In the absence of explicit language to the contrary, [Georgia] courts will not interpret an indemnity agreement as a promise by the indemnitor to save the indemnitee harmless on account of the latter's own negligence." (Cits.)' [Cit.] . . . 'Georgia courts never imply an agreement to indemnify another for one's own negligence in the absence of express language. (Cits.)' " *Allstate Ins. Co. v. City of Atlanta*, 202 Ga. App. 692, 693 (415 SE2d 308).

Myers contends the Georgia law and policy just quoted are consistent with the "express negligence doctrine" adopted by Texas courts, and authorize us to find the provision in this case unenforceable because it does not expressly state that Myers will indemnify Texaco against a claim arising out of Texaco's own negligence. Myers asserts that the indemnity provision in this case is virtually identical to the one found wanting by the Texas Supreme Court in *Singleton v. Crown Central Petroleum Corp.*, 729 SW2d 690, as to which the Texas Court of Appeals in *Gulf Oil v. Ford, Bacon & Davis, Texas*, 782 SW2d 28, 30 (1) stated: "The agreement in *Singleton* failed to meet the express negligence test, because it contained no direct language stating the parties intended that the contractor would indemnify owner for the consequences of the owner's own negligence. Rather, it could, at best, only be inferred that such was the parties' intent because the language stated that the only accidents for which indemnity will not apply are those arising out of the owner's sole negligence." In support of its contentions, Myers relies on *Linden-Alimak, Inc. v. McDonald*, 745 SW2d 82; *Gulf Coast Masonry v. Owens-Illinois*, 739 SW2d 239; compare *Boyd v. Amoco Production Co.*, 786 SW2d 528; *Adams Resources &c. Corp. v. Resource Drilling*, 761 SW2d 63.

We find, however, that Texas law, properly construed by Georgia law, does not require us to find that this provision is unenforceable as regards Texaco's joint negligence, on grounds that it does not contain the necessary express intent. Regardless whose law governs a contract, Georgia law requires us to give meaning to every term rather than construe any term as meaningless, and to construe a contract so as to uphold the contract in whole and in every part; and if construction is doubtful, "that which goes most strongly against the party . . . undertaking the obligation is generally to be preferred." OCGA § 13-2-2 (4) and (5). This statutory mandate is of more force than a supposed presumption, whether arising out of Texas or Georgia law, that the parties never intended that Myers would indemnify Texas for Texaco's joint negligence.

Paragraph 9 provides that Myers agrees to indemnify Texaco from and against "*each and every* claim . . . on account of personal injury . . . arising out of . . . performance of the services hereunder, *except* such as . . . resulted from Texaco's *sole* negligence." (Emphasis supplied.) This language is clear. If this personal injury had resulted from Texaco's *sole* negligence, Myers would not be liable for indemnification. But Myers is liable to indemnify for "each and every" *other* kind of claim; this necessarily includes a claim arising out of joint negligence. If the parties had intended Myers would not indemnify Texaco from a claim arising out of *any* negligence of Texaco, they would have said so. In that event, the provision would not

have excepted only claims arising out of Texaco's *"sole"* negligence. In order to construe this provision as having any reason for being or any meaning at all, an agreement to indemnify Texaco as to claims arising out of joint negligence must be directly deduced.

Since Georgia law does not permit us to ignore plain language in a contract or to construe it as meaningless, if Texas law dictates a conclusion that this provision is unenforceable as a statement of indemnification for joint negligence, such law would be against the public policy of this state to interpret contracts in their reasonable meaning and according to the intent of the parties. See *Hull v. Lewis*, 180 Ga. 721 (180 SE 599). This whole contract is a joint undertaking by Myers and Texaco; that this joint undertaking would include Myers' indemnification for Texaco's joint negligence is not unreasonable. That Myers would indemnify Texaco from *all* claims *except* those arising from Texaco's *"sole"* negligence is likewise reasonable. In order to conclude Myers did not mean to indemnify Texaco for Texaco's joint negligence, an express provision to *that* effect would be required, in which case the language "excepting" claims arising from Texaco's "sole" negligence would be nonsense. We cannot construe this contract toward such a result.

*Allstate Ins. Co. v. City of Atlanta*, supra, cited to prove that Georgia law and policy are consistent with the Texas express negligence doctrine, and its authority (*Georgia State Tel. Co. v. Scarboro*, 148 Ga. App. 390, 391 (2) (251 SE2d 309)) both involved contracts in which no intent was expressed to indemnify the indemnitee for claims arising out of the indemnitee's own negligence, jointly or solely. Thus, the statement that " ' "[t]he words of the contract will be scrutinized closely to discover whether such an intent [to indemnify a party against his own negligence] is actually revealed in them and every presumption is against such intention," ' " (*Allstate Ins. Co.*, supra at 693) refers to attempts to create indemnification for a party's own negligence where no such intent may be reasonably inferred. Certainly where there is no hint that an indemnitor means to indemnify another from his own negligence, the presumption would be against creating such an obligation out of thin air. Such was the case in both *Allstate Ins. Co.* and *Georgia State Tel. Co.*, and that is the context in which their reference to a presumption-against-indemnification must be understood. Those contracts were very different from the one in this case, which plainly expresses the intent for Myers to indemnify Texaco for some degree of Texaco's own negligence, for it requires indemnification of Texaco for *each and every* claim *except* one arising out of its *sole* negligence. Furthermore, the statement of public policy in *Allstate Ins. Co.* and *Georgia State Tel. Co.* rests upon the idea that we are reluctant to cast the burden of negligence actions "upon those who are not actually at fault." *Allstate Ins. Co.* at 693.

The basis of such a policy is necessarily weakened where the negligence is the joint negligence of the indemnitor and the indemnitee, for in such case the indemnitor is at fault.

These same Georgia cases (*Allstate Ins. Co.* and *Georgia State Tel. Co.*) require us to scrutinize the contract closely " ' "to discover whether [an intent to indemnify the indemnitee against his own negligence] is actually revealed in them." ' " *Allstate,* supra at 693. This statement on its face is a disapproval of the idea that the parties' intent may not be reasonably inferred from plain language such as exists in this case. The intent to indemnify Texaco against its own joint negligence is not merely "implied" but is plainly expressed. Consistent with our statutory law and public policy, a patent inference may be drawn from plain language or an obvious interpretation may be required; if Texas law prevents us from doing this, our public policy requires that the Texas law not be followed. See *Nasco, Inc.,* supra at 676 (2). To conclude there is a presumption against indemnification for joint negligence merely because the contract (though it could mean nothing else) did not expressly say "Myers indemnifies for joint negligence," will violate OCGA § 13-2-2 (4): "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."

Accordingly, this indemnification provision is enforceable against Myers as to this claim for Texaco's joint negligence. The trial court did not err in granting summary judgment to Texaco on this issue.

3. Moreover, contrary to Myers' assertions, this contract is not virtually identical to the one held inadequate by the Texas Supreme Court in *Singleton v. Crown Central Petroleum Corp.,* supra at 729 SW2d 690. The *Singleton* agreement provided that the claims for which the owner was indemnified were those arising out of *"the activities of [c]ontractor . . . or in connection with the work to be performed . . . under this contract,* excepting only claims arising out of accidents resulting from the sole negligence of [o]wner." *Singleton v. Crown Central Petroleum Corp.,* 713 SW2d 115, 117-118. That provision on its face indemnifies the owner only as to claims arising out of "the activities of the *contractor*"; it does not apply to a claim arising out of any conduct of the *owner* unless it arises in connection with the work to be performed under the contract, and even then the owner is not indemnified for claims arising out of his sole negligence. The Texas Supreme Court did not say why it found that contract "does not satisfy the 'express negligence' rule," (*Singleton,* 729 SW2d at 691), and we cannot bind ourselves to Texas cases such as *Gulf Oil Corp. v. Ford, Bacon & Davis,* supra, which do not recognize the ambiguous and limited nature of the whole indemnity clause in the *Singleton* contract. Of the same ilk as the *Singleton* contract is the one

in *Gulf Coast Masonry v. Owens-Illinois*, supra, where the contractor agreed to indemnify the owner from loss arising out of "any act or omission of contractor." That provision on its face indemnifies the owner only for claims arising out of the contractor's acts or omissions. No intention is expressed in that contract to indemnify the owner for claims arising out of the owner's conduct, so that case is no authority for this case.

Doubtless there are Texas cases in which indemnity provisions are so clear that they require no interpretation to find indemnification (see *Gulf Oil Corp. v. Ford, Bacon & Davis*, supra; *Boyd v. Amoco Production Co.*, supra), but the fact that an interpretation is required or that an obvious inference must be made from plain and unambiguous language, such as in this case, does not make a provision unenforceable under Georgia law. In fact, the presumption is to the contrary. OCGA § 13-2-2 (4). The claim in this case did not arise from Texaco's sole negligence. Therefore, under the express terms of the agreement, this claim is not excepted from Myers' promise to indemnify. Any other construction would make nonsense of the contract provision and is not preferred under Georgia law.

Accordingly, under Georgia rules of contract construction with respect to this contract governed by Texas law, the intent of Myers to indemnify Texaco's joint negligence is clearly and unmistakably expressed. Summary judgment to Texaco on the indemnification issue was proper; the trial court's award to Texaco on the judgment amount and for attorney fees and expenses with regard to the indemnity provision is affirmed, and the case is remanded for resolution of the issue of breach of Myers' contract obligation to provide liability insurance for Texaco and damages relating thereto.

*Judgment affirmed and case remanded with direction. Sognier, C. J., McMurray, P. J., Carley, P. J., Pope, Cooper, Andrews and Johnson, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

The issue is the effect of an indemnification provision in a contract for services for the operation of a retail service station and food mart. It is placed before us procedurally as follows.

After a hearing on the cross-motions for summary judgment and consideration of the evidence, the court granted Texaco's motion for summary judgment with regard to its crossclaim for contractual indemnity against Myers and denied Myers' cross-motion for summary judgment. The order stated that inasmuch as the court was rendering its decision on Texaco's crossclaim for contractual indemnity, the court was not ruling on that portion of Texaco's motion for summary judgment with regard to its breach of contract crossclaim nor upon Myers' defense of waiver of the insurance procurement provision.

Myers' appeal is a threefold challenge: The indemnification provision, Paragraph 9, itself is unenforceable by virtue of its failure to satisfy the Texas "express negligence doctrine." The indemnification provision construed together with the insurance provision, Paragraphs 9 and 10 together, does not satisfy the Texas "express negligence doctrine" and indemnification for negligence is therefore unenforceable. The indemnity provision is likewise unavailable to Texaco to recover its attorney fees and costs.

No issue "is raised on appeal" in regard to the court's not ruling on the breach of contract portion of the crossclaim and so none should be addressed. OCGA § 5-6-34 (d); *Westwind Corp. v. Washington Fed. Savings &c. Assn.*, 195 Ga. App. 411 (1) (393 SE2d 479) (1990).

1. The contract expressly provides and the parties agree that Texas law should be applied in assessing any contractual indemnity.

The Supreme Court of Texas, in following its trend toward a more strict construction of indemnity contracts, has adopted an "express negligence doctrine," which provides that when parties to a contract seek indemnification of the indemnitee from the consequences of its negligence such an intention must be "specifically stated within the four corners of the contract." *Ethyl Corp. v. Daniel Constr. Co.*, 725 SW2d 705, 708 [2] (Tex. 1987). Such a view is consistent with Georgia public policy which "is reluctant to cast the burden of negligent actions upon those who are not actually at fault. Thus '(i)t is well established in Georgia that contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract expressly states that the negligence of the indemnitee is covered. (Cits.)' [Cits.] ' "The words of the contract will be scrutinized closely to discover whether such an intent is actually revealed in them and every presumption is against such intention. In the absence of explicit language to the contrary, [Georgia] courts will not interpret an indemnity agreement as a promise by the indemnitor to save the indemnitee harmless on account of the latter's own negligence." (Cits.)' [Cits.] . . . 'Georgia courts never imply an agreement to indemnify another for one's own negligence in the absence of express language. (Cits.)' " *Allstate Ins. Co. v. City of Atlanta*, 202 Ga. App. 692, 693 (415 SE2d 308) (1992). The provision in *Allstate* was similarly sweeping ("any and all claims") and was insufficient to impose liability for indemnity because it was not specific, express, or explicit. There is thus no impediment to applying Texas law.

2. The indemnity provision of Paragraph 9, on its own, does not satisfy the Texas express negligence test. The relevant language is virtually identical to an agreement examined in *Singleton v. Crown Central Petroleum Corp.*, 729 SW2d 690 (Tex. 1987). In unfavorably comparing the *Singleton* agreement to one in *Gulf Oil v. Ford, Bacon &*

*Davis, Texas,* 782 SW2d 28, 30 [1] (Tex. App. — Beaumont 1989), the Texas Court of Appeals in Beaumont stated: "The agreement in *Singleton* failed to meet the express negligence test, because it contained no direct language stating the parties intended that the contractor would indemnify owner for the consequences of the owner's own negligence. Rather, it could, at best, only be inferred that such was the parties' intent because the language stated that the only accidents for which indemnity will not apply are those arising out of the owner's sole negligence." Such is the infirmity of the indemnity provision in the case at bar. See also *Linden-Alimak, Inc. v. McDonald,* 745 SW2d 82 (Tex. App. — Fort Worth 1988); *Gulf Coast Masonry v. Owens-Illinois,* 739 SW2d 239 (Tex. 1987). Compare *Boyd v. Amoco Production Co.,* 786 SW2d 528 (Tex. App. — Eastland 1990); *Atlantic Richfield v. Petro. Personnel,* 768 SW2d 724 (Tex. 1989); *Adams Resources &c. Corp. v. Resource Drilling,* 761 SW2d 63 (Tex. App. — Houston (14th Dist.) 1988). The point is that the omnibus language is not sufficient to cover joint negligence. Under Texas law, a *blanket* provision which excludes indemnity only for the sole negligence of indemnitee does not cover joint negligence, as here, because it does not expressly say so. "Direct language" is mandatory.

3. The indemnity provision of Paragraph 9 combined with the insurance procurement provision of Paragraph 10 still does not satisfy the express negligence requirement.

The Texas Court of Appeals in Dallas considered and rejected an analogous situation in *Adams v. Spring Valley Constr. Co.,* 728 SW2d 412 (Tex. App. — Dallas 1987). Compare *Klepac v. Champlin Petroleum Co.,* 842 F2d 746 (5th Cir. 1988), in which the issue of whether or not the indemnity language satisfied the Texas express negligence doctrine was not squarely addressed. In *Adams,* the court was asked to construe indemnity language in a subcontract in conjunction with language from a certificate of insurance procured in conjunction with the subcontract to find an express intent that the subcontractor was to indemnify the contractor against liability due to the contractor's negligence. Although the certificate of insurance was physically a separate document from the subcontract, the court assumed arguendo that the certificate was a condition of the subcontract and within its four corners. Even considering the combined language, it was an inadequate statement of assumed negligence indemnity for the indemnitee.

The combined language at issue here fails because at most the sought indemnity for joint negligence can only be *inferred* from the additional language of the insurance procurement provision. Implication and inference cannot transform omission into an express or explicit statement of intent, or as *Gulf Oil* says, "direct language," to indemnify the indemnitee against its own concurrent negligence. The

trial court erred in ruling that the contract provisions were sufficient.

4. Nor was Texaco entitled to summary judgment on the question of its indemnification for attorney fees and costs.

In *Construction Inv. &c. v. Dresser Ind.*, 776 SW2d 790 (Tex. App. — Houston (1st Dist.) 1989), the Texas Court of Appeals in Houston (1st Dist.) addressed the issue of whether or not an indemnity contract, which did not meet the express negligence test, could obligate the indemnitor to pay the indemnitee's attorney fees for *successfully* defending a negligence claim by an employee of the indemnitor's subcontractor. The court concluded that it could, citing, *inter alia*, two federal court decisions applying Texas law and holding that "an indemnitee may recover costs where it was not found negligent, even though the contract did not meet the express negligence standard." Id. at 792. The decision in *Dresser* rests in part on the fact that the indemnitee was not found to be negligent on the underlying tort claim. In this case, not only was indemnitee Texaco found to be negligent but to a much greater degree than joint tortfeasor/indemnitor Myers.

Furthermore, in *Dresser*, unlike the case at bar, the provision regarding defense costs was "so specific, lengthy, and repeated" that it was more properly characterized as a " 'separate item of indemnification.' " See *Dresser*, supra at 793.

The provision in this case for indemnification of defense costs, including reasonable attorney fees and expenses, is more closely akin to that in *Monsanto Co. v. Owens-Corning Fiberglas*, 764 SW2d 293 (Tex. App. — Houston (1st Dist.) 1988). As noted in *Dresser*, "the indemnity provision in *Monsanto* was approximately 12 words in length" and did "not compare with the specific, lengthy indemnity clause" in *Dresser*.

The unelaborated mention of indemnification of defense costs in the short indemnity provision at bar cannot reasonably be found separate and distinct from any attempt at indemnification for negligence, under the *Dresser* rationale.

The judgment for Texaco should be reversed.

DECIDED JULY 16, 1992 —
RECONSIDERATION DENIED JULY 31, 1992 —

*Lane, O'Brien, Caswell & Taylor, Richard L. Ormand, Russell T. Bryant,* for appellants.

*Fortson & White, Michael J. Rust, Matthew G. Moffett,* for appellee.