**Roy BARNES and wife, Bonnie Lee Barnes, Plaintiffs–Appellants,**

v.

**MISSION INSURANCE COMPANY, Defendant–Third Party Plaintiff,**

v.

**HOUSTON GENERAL INSURANCE COMPANY, Third Party Defendant–Appellee.**

**No. 90–4145.**

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1991.

Gregory A. Hoover and Nicholas H. Patton, Young, Patton & Folsom, Texarkana, Tex., for plaintiffs-appellants.

Phillip W. Gilbert, Brenda Neel High and Bern A. Mortberg, Riddle & Brown, Dallas, Tex., for third-party defendant-appellee.

Before GOLDBERG, KING and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

This is a diversity action in contract. Appellants, an injured worker and his wife, settled with two insurers for $750,000. Appellants pledged in the settlement agreement that they would not settle with a third insurer unless the third agreed to release its claims against the first two. The appellants breached their agreement, settling with the third insurer for $450,000 without obtaining a release. The third insurer was then reimbursed by the second, and the latter sought reimbursement from the appellants (the injured worker and his wife). The district court held for the insurer, and we affirm.

*Facts and Prior Proceedings* [1]

Roy Barnes, an employee of Seven–O Corporation, was injured while working on the premises of Lone Star Steel. He and

---

1. *See also* facts recited in *Barnes v. Lone Star Steel Co.*, 642 F.2d 993, *reh. denied*, 650 F.2d 282 (5th Cir. Unit A 1981) (related case).

his wife Bonnie Lee Barnes filed suit against Lone Star in the Eastern District of Texas, seeking $3.7 million in actual damages and $3 million in punitives. Lone Star had three insurers, one primary and the others excess.[2] The Barneses settled with the primary and first excess insurers, receiving $750,000 in return for a settlement agreement which provided, among other things, that the Barneses would not settle with the third unless it agreed to release its claims against the first two. *See* Transaction 1.[3]

Subsequently, the Barneses settled with the third insurer for $450,000, *see* Transaction 2, but they did *not* obtain the release that they had pledged to obtain. Later, Barnes' employer, Seven–O, reimbursed the first two insurers from its workers compensation policy. *See* Transactions 3 and 4. The third insurer, Mission Insurance Co., then sued the second, Houston General Insurance Co., seeking Houston General's share of the reimbursement (since Mission's policy was excess to Houston General's). Mission and Houston General subsequently settled, with Houston General paying over its $450,000 share.

*See* Transaction 5. Houston General then sought this money from the Barneses, claiming breach of contract. The company prevailed in the district court, and the Barneses now appeal.

*Discussion*

Central to this case is the settlement agreement that the Barneses signed with the first two insurers, Employer's Casualty and Houston General. This settlement agreement was the expression of what we denote Transaction 1, in which Barneses received $750,000. In return for this sum, the Barneses agreed, inter alia, that they would not settle with Mission unless Mission agreed to release its claims against Employers Casualty and Houston General. This covenant by the Barneses is contained in paragraph five of the settlement agreement, which reads as follows:[4]

> The [Barneses] further agree that they shall not enter into any settlement or agreement for settlement with Mission Insurance Company which does not provide for a release by Mission Insurance Company of all claims, demands, actions and causes of action of any kind or na-

**2.** Lone Star was covered by $5.3 million of liability insurance, issued as follows:

| Insurer | Type of policy | Amount |
|---|---|---|
| Employers Casualty | primary | $ 300,000 |
| Houston General | excess to Employers Casualty | $1,000,000 |
| Mission | excess to Houston General | $4,000,000 |

**3.** References to Transaction ___ are to the numbered transaction in the following table. Amounts are in thousands of dollars ($000's). Amounts paid *to* a party are shown as positives; amounts paid *by* a party are (negatives). The table shows amounts exclusive of interest and costs, although some of the actual monies paid did include interest and costs.

| No. | Date | Barnes | Employers | Houston | Mission | Seven–O | Court* |
|---|---|---|---|---|---|---|---|
| 1 | 10/30/79 | 750 | (300) | (450) | | | |
| 2 | 7/10/81 | 450 | | | (450) | | |
| 3 | 12/28/81** | | | | | (750) | 750 |
| 4 | 12/28/81** | | 300 | 450 | | | (750) |
| 5 | 11/14/88** | | | (450) | 450 | | |
| Net | | 1200 | 0 | (450) | 0 | (750) | 0 |

*Notes*:

\* "Court" denotes the registry of the U.S. District Court, Eastern District of Texas.
\*\* Approximate date.

**4.** The Barneses have expended much time disputing the applicability of another provision of the agreement, paragraph four, in which the Barneses agreed to indemnify Employers Casualty and Houston General against claims by Mission. We do not discuss the indemnification provision, as the non-execute provision (paragraph five) is quite clear. No darkening of the skies over paragraph four can render paragraph five any less pellucid.

ture whatsoever which Mission Insurance Company may now have or may have or own in the future against … Houston General Insurance Company [or others] arising out of [the Barneses'] claims herein, the various policies of insurance, the judgment or any amended or revised judgment herein, this settlement, and any and all actions of said parties taken in connection with, or in effectuating, this settlement and agreement.

As the district judge remarked, this provision is "as plain as day": it directs that the Barneses not settle with Mission without obtaining a release in favor of Houston General. The Barneses received valuable consideration in return for their agreement to abide by this provision. It is clear that the Barneses breached this agreement, when they subsequently settled with Mission for $450,000 without obtaining a release. The Barneses do not dispute these conclusions.

It is equally clear to us that Houston General suffered a loss of $450,000 as a result of the breach. As the table of transactions shows, when all was said and done, Houston General was out of pocket $450,000. Whereas, if the Barneses had adhered to their agreement, either Mission would not have settled with them or it would have signed a release. Either way, Mission would have had no claim against Houston General, and Transaction 5 would not have occurred. Houston General would have been $450,000 better off. The loss flowed from the breach like water down a stream.

The Barneses attempt to refute the laws of contractual physics by arguing that the $450,000 "belonged" to Seven–O, not Houston General. This argument amounts to little more than an invitation to a judicial shell game. It is an invitation we decline. No sleight of hand can conceal the causation of damages here, any more than one can hide a hare under the Ace of Spades.

Unlike Elmer Fudd, this court recognizes a rabbit when it has one by the ears.

The judgment below is AFFIRMED.[5]

---

**5.** The Barneses also present an equitable argument based on estoppel or unclean hands. It is without merit.